TIFFANY STOVALL, Plaintiff-Appellee, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellants (Hyde Park Kidney Center, Defendant).

First District (6th Division) No. 1—92—4030

Opinion filed April 29, 1994.

Roland W. Burris, Attorney General, of Chicago (Jan E. Hughes, Assistant Attorney General, of counsel), for appellants.

Carl Flanigam, of Legal Assistance Foundation of Chicago, of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Defendants appeal from an order of the circuit court of Cook County reversing the decision of the Illinois Department of Employ-

ment Security Board of Review (Board) which had denied plaintiff's claim for unemployment insurance benefits. Defendants contend that the circuit court erred in reversing the decision where it was not against the manifest weight of the evidence.

Plaintiff was employed as a medical secretary at Hyde Park Kidney Center (the Center) for seven months until her employment was terminated on May 10, 1991, for insubordination. Her claim for unemployment insurance benefits was denied by the Board, which found that plaintiff's behavior constituted misconduct under the provisions of the Unemployment Insurance Act (Act) (Ill. Rev. Stat. 1991, ch. 48, par. 432(A)).

The Center challenged plaintiff's eligibility for benefits and in support of its argument submitted letters which are a part of the record. The letters stated that on April 29, 1991, Linda Haines, business manager at the Center and plaintiff's immediate supervisor, gave plaintiff a "write-up" based on complaints she had received regarding the length of time plaintiff took to complete her work, the number of errors she made, and the number of times work had to be returned to her for corrections. On May 1, 1991, plaintiff entered Haines' office "yelling" at Haines about an incident that occurred between plaintiff and the Center's social worker, Ruth Ann Riley. Other workers at the Center overheard plaintiff shouting at Haines. Stovall told Haines that she thought workers at the Center were harassing her, and she accused Haines and Riley of conspiring to cause her to lose her job. Additionally, plaintiff complained that she thought that Riley was changing her work in the computer and making errors in papers that she had typed. Haines suggested that a meeting be held to discuss the problem.

A meeting was held on the next day. Present were plaintiff, Haines, Riley and Marcie Hollandsworth, the Center's administrator. At the meeting plaintiff accused Riley of harassing her by putting errors in her work in the computer, throwing work at her, and by taking work out of her personal box. Hollandsworth told plaintiff that she did not believe that the social worker was putting errors into her work and reminded plaintiff that the mistakes plaintiff was accused of making were of the same type that were brought to her attention in her six-month evaluation and in the write-up she received a few days earlier.

On May 10, 1991, plaintiff was late for work, stating that she had to return home to get some work that she had taken home with her. She told Haines that she had been taking work home with her so that other workers would not steal it from her desk. Haines told her that "under no circumstances" could she take work home with her

due to the confidential nature of the records. Later that morning, Haines gave plaintiff a memo to type which was written by Joyce Sieruga, clinical manager, Martha Jackson, head nurse, and Willie Smith, chief technician. The memo concerned changes at the Center and was going to be distributed to staff members by Smith. Smith later came to Haines to tell her that he saw an employee, Eddie Strong, at plaintiff's desk reading the memo and that plaintiff quickly turned the memo over when she saw that Smith had observed them. Smith was angry as he described the incident to Haines.

A meeting was called that day to discuss the incident with plaintiff, Haines, Hollandsworth, Smith, Strong and Jackson in attendance. Smith was "extremely upset" that plaintiff had given the memo to Strong to read. Strong stated that plaintiff had given the memo to him to read, but plaintiff responded that he was lying. Plaintiff also accused Smith of lying about the incident stating that she could not have given the memo to Strong to read since she had already typed it and given it to Haines. However, her statement was contradicted by a work assignment record which indicated the actual time at which the memo was given to Haines. During the meeting, Smith became angry, jumped out of his chair, and started shouting that plaintiff was lying. Plaintiff felt threatened by Smith and left the meeting, stating that she was not going to take it. Haines left the meeting to look for plaintiff and was told by an employee that plaintiff had grabbed her purse and said she was getting out of here. Haines found plaintiff and persuaded her to return to the meeting.

The meeting resumed with only plaintiff, Haines, Hollandsworth and Jackson in attendance. Plaintiff again accused workers of lying about her, stealing work from her desk, and inserting errors into her work. She called Haines a liar and told her that "I don't have to do anything you tell me to do." Hollandsworth told plaintiff that since she started working at the Center, there had been nothing but chaos, confusion and arguments which were disrupting the operation of the Center. Hollandsworth also told her that she was not allowed to take home any property belonging to the Center and that she could no longer be trusted since she had been taking confidential papers home. Plaintiff said that she had been making copies of her work and hiding them "somewhere in the building." Hollandsworth told plaintiff that she had problems getting along with people at work and that her behavior could no longer be tolerated. Then, noting that during the course of the meeting plaintiff was argumentative, disrespectful, and insubordinate to Hollandsworth and to her immediate supervisor, Hollandsworth told plaintiff that she was terminated.

In a written statement plaintiff advised a claims adjudicator that

she had not been insubordinate, but was terminated for taking her work home. She stated that she had been unaware that her actions violated her employer's policy. She also stated that employees at the Center harassed her in an attempt to get her fired. The claims adjudicator denied her unemployment insurance benefits, finding that she had been terminated for misconduct and that she could have avoided being terminated.

Plaintiff appealed, and an administrative hearing was held on July 25, 1991. There, Haines testified that she was plaintiff's immediate supervisor. She described the disciplinary meeting which was held to discuss plaintiff's behavior and stated that during the course of the meeting plaintiff called her a liar. Plaintiff also stated that she could not believe anything that Haines said and plaintiff wanted to leave the meeting. When Haines asked her to stay, plaintiff said, "I don't have to do anything that you tell me to." The referee then asked Haines if plaintiff would have been discharged for her prior behavior if the meeting had "gone smoothly," and Haines responded that she would not. Haines then said that the way plaintiff handled herself in the meeting "made it quite clear that she had no intention of doing anything that I told her to do" and this caused her to be terminated. Haines stated that she had had problems with plaintiff in the past but believed that they had been resolved until the incident occurred at the meeting. She stated that plaintiff had been warned informally about how she talked to other employees, but had not been warned about her behavior toward Haines. Haines further testified that although plaintiff had never spoken to her in that manner before, plaintiff's behavior at the meeting typified almost every encounter plaintiff had with the other employees whereby plaintiff would cause an argument disrupting the entire office. She stated that plaintiff's contentiousness did not begin until about three months after she was hired.

Plaintiff testified that she was terminated for taking her work home. She admitted calling Haines a liar but denied telling her that she would not take direction from her. The hearing referee found that plaintiff was discharged because she frequently had disagreements with co-workers. The referee further found that the final incident which was the immediate cause of her discharge occurred at her disciplinary hearing where she called her supervisor a liar and argued with her and others present. The referee found that plaintiff's actions were clearly insubordinate and constituted misconduct under the Act. The Board affirmed the referee's decision.

Plaintiff filed a complaint for administrative review, and after a hearing, the trial court reversed the Board's decision stating:

"I am going to reverse the decision. I don't think misconduct was established. It doesn't appear there was a single act of insubordination. There had been no prior warning of insubordination that she had been counseled about trying to get along with the people, it appearing she couldn't take constructive criticism, as the supervisor indicated, there was nothing explicit. There was not a warning."

Defendants contend that the Board correctly determined that plaintiff was discharged for misconduct in the form of insubordination, and therefore she was ineligible for unemployment benefits.

■ The Act defines misconduct as:

"the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." Ill. Rev. Stat. 1991, ch. 48, par. 432(A).

■ In a case involving a claim for unemployment benefits, the Board is the trier of fact and its findings of fact are considered *prima facie* true and correct. (Ill. Rev. Stat. 1991, ch. 110, par. 3—110; *Grant v. Board of Review* (1990), 200 Ill. App. 3d 732, 734, 558 N.E.2d 438.) The function of a reviewing court in such a case is to determine whether the Board's findings were against the manifest weight of the evidence. (*Nichols v. Department of Employment Security* (1991), 218 Ill. App. 3d 803, 809, 578 N.E.2d 1121.). A reviewing court should not substitute its judgment for that of the agency unless the record lacks substantial evidence in support of the agency's findings. (*Collier v. Department of Employment Security* (1987), 157 Ill. App. 3d 988, 993, 510 N.E.2d 623.) The existence of a reasonable rule or policy does not have to be proved by direct evidence, but can be found by a court to exist through a common sense realization that some behavior intentionally and substantially disregards an employer's interest. (*Meeks v. Department of Employment Security* (1990), 208 Ill. App. 3d 579, 585, 567 N.E.2d 481.) While unemployment insurance benefits are a conditional right and the burden of establishing eligibility rests with the claimant, the Act must be liberally interpreted to favor the awarding of benefits. *Adams v. Ward* (1990), 206 Ill. App. 3d 719, 723, 565 N.E.2d 53.

■ Plaintiff asserts that her outburst against Haines at the meeting was merely argumentative and not legally sufficient to be characterized as misconduct. She contends that the testimony regarding her prior behavior and her inability to work with the other employees was irrelevant because she was only terminated for the

incident that occurred at the meeting. She also asserts that because there was no physical injury, financial loss or other specific, tangible injury suffered by the employer or employees, defendant did not demonstrate harm within the meaning of the Act. Finally, she asserts that we may not consider her alleged statement to Haines that she would not take orders from her because there was no specific administrative finding that such a statement was ever made.

In the present case, the evidence indicated that three months into her employment, plaintiff began to exhibit a pattern of behavior which was argumentative and disruptive. Plaintiff left a meeting crying and angry and was asked to return just a short time later. The employee who had provoked her was no longer present when the meeting was resumed. At this point plaintiff called Haines a liar and stated that she did not have to follow Haines' orders.

Plaintiff's behavior at the meeting was clearly sufficient reason to discharge her, and we find that the Board's conclusion that her action rose to the level of willful misconduct as contemplated by the Act was not manifestly erroneous.

For these reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

EGAN, P.J., and RAKOWSKI, J., concur.