FIFTH DIVISION
December 5, 2008

No. 1-07-1646

| | | |
|---|---|---|
| CARMEN T. CZAJKA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 L 50739 |
| | ) | |
| THE DEPARTMENT OF | ) | The Honorable |
| EMPLOYMENT SECURITY, BOARD OF | ) | Sheldon Gardner, |
| REVIEW, AND SAINT LIBORIUS SCHOOL, | ) | Judge Presiding. |
| | ) | |
| Defendant-Appellant. | ) | |

JUSTICE TOOMIN delivered the opinion of the court:

Plaintiff, Carmen T. Czajka, appeals from an order of the circuit court affirming the

decision of the Board of Review of the Illinois Department of Employment Security (the Board),

which denied Czajka's claim for unemployment compensation benefits.  On appeal, Czajka

contends that (1) the Board's conclusion that Czajka committed statutory misconduct was against

the manifest weight of the evidence; and (2) the Board's denial of benefits violated Czajka's first

amendment right to the free exercise of her religion.  For the reasons that follow, we reverse and

remand.

BACKGROUND

Czajka was employed as a sacristan at the Saint Liborius School, from October 1992 through December 2, 2005, earning $6 an hour. Czajka, who was 63 years old at the time of her termination, was responsible for keeping the church and sacristy clean. She was not part of the school administration. Czajka's termination stemmed from her objections to a program that was mandated by the Roman Catholic Diocese of Joliet wherein children would view a movie, "Talking About Touching," and participate in discussions concerning inappropriate physical contact. On December 2, 2005, Reverend Treyes, pastor of Saint Liborius, fired Czajka because of her blatant insubordination.

Following termination, Czajka sought unemployment compensation benefits before the local office of the Illinois Department of Employment Security (IDES). The claims adjudicator's initial findings reflect that Czajka was discharged because "she did not agree with the church." On December 22, 2005, the adjudicator determined that Czajka was eligible for benefits because the "action which resulted in her discharge was not deliberate or willful." Saint Liborius filed a timely protest to the adjudicator's decision and sought further review before the IDES Appeals Division.

On April 4, 2006, the matter proceeded to a referee's hearing before an administrative law judge. The parties appeared by telephone and presented the following relevant testimony. Reverend Treyes initially testified concerning the "Talking About Touching" program mandated by the diocese. In implementing the program, the school notified the parents of the film showing to be followed by classroom discussions attended by students of the school and the religious

2

education program. The film was scheduled to be shown November 10, 2005, and during a casual lunch several days prior to the showing Czajka voiced her disagreement with the program.

On November 14, the principal and director of the religious education program informed Reverend Treyes that a school parent was putting flyers in opposition to the program on cars at the Crete campus. He was also informed of rumors that individuals opposing the program had threatened to alert the media to what was labeled as pornographic material for the children. In turn, the reverend called Czajka to his office to ask her whether she knew anything about the parent concerns over the Diocese's program. During the ensuing discussion, Czajka repeatedly stated that she was against the program and that she was telling school parents and parish families that they should not support it. In turn, Reverend Treyes reminded Czajka that she should make a distinction between her personal opinion and openly campaigning against the program; that she was an employee of the parish and was expected to support its programs or policies. According to Reverend Treyes, Czajka refused "to agree with me" and told him she would "lay [down] her life for what she believes in." She found the program totally wrong, "calling it pornography." Czajka understood that Reverend Treyes was in earnest in warning her that what she was doing was not in accord with her position as an employee of the parish. She acknowledged that if she campaigned openly against the program "that would amount to probably resigning as a sacristan."

Czajka continued to work up to her vacation toward the end of November. Reverend Treyes had no further conversations with Czajka nor did he receive any additional reports of her disagreement with the program. Czajka was terminated on December 2, 2005, following her return from vacation.

In her testimony, Czajka acknowledged her disagreement with the program, questioning whether it actually had been mandated by Bishop Schlarman. As an educator of 10 to 11 years, Czajka did not think it was proper to put the materials out until "they really looked into it." She admitted that she called one person, her cousin's daughter, and asked her to call other parents to remind them that they could opt out of the program. She further explained:

> "My whole thing was to get the parents, call them and tell them go check with the principal, see what this is before you let your children go through. I had not an open campaign outside. The person that was out there passing out literature, she did it on her own."

It was uncontroverted that Czajka's call was made before Reverend Treyes called her to his office.

Although Czajka acknowledged that as a sacristan she had nothing to do with school policies, she denied that she had campaigned openly against the program.

> "I had my work as a sacristan. I could not be outside campaigning for nothing. If they wanted to, they could. But I didn't have any time to do that because I was going on vacation. I had to leave the church clean."

She agreed that during the meeting with Reverend Treyes, she told him that she "would basically lay down her life to make sure that the program didn't get shown to the students."

The referee's decision reversing the adjudicator's award was mailed the following day. Among his findings of fact, the administrative law judge noted:

> "The employer asserts that the claimant objected to a program that was mandated by

the diocese of Joliet wherein, children would view a video and participate in discussions concerning inappropriate touching. The claimant objected to the program and the viewing of the video. The claimant voiced her concerns to the pastor. The claimant then proceeded to implement a 'grass roots' effort to abort the viewing of the video. The claimant's actions were responsible for the placing of leaflets on the cars at services calling [for] the banning of the program. The claimant's [*sic*] admits her actions and conduct in this regard and believes that the video bordered on pornography."

The referee likewise observed that Czajka's objection to the program and attendant video was instrumental in subverting the program of the employer. He therefore concluded:

"[T]he claimant's personal opinion transcended her authority. The claimant took substantial steps to thwart the program. It is well settled that in all cases where a worker comes in contact with the employer's customers in the course of her work, she is under a duty to conduct herself in a manner so as not to injure the employer's interest. An employee who is impudent, discourteous, and/or argumentative when serving the employer's patrons violates and breaches a duty and the resulting discharge will be considered misconduct."

The referee determined that Czajka's actions were against the best interest of the employer and that she was discharged for misconduct connected with her work. Accordingly, Czajka was disqualified for unemployment compensation benefits.

Czajka appealed the referee's decision to the Board of Review. In its decision, the Board

essentially adopted and mirrored the factual findings and legal reasoning of the referee. Moreover, the Board highlighted certain findings relative to the dispositive November 10 meeting between Czajka and Reverend Treyes:

"At this meeting, the pastor told her that she was entitled to her personal opinion, but as an employee of the Parish, she was expected to support the policy of the Parish. The claimant stated that she believed the program was pornography and advised that: 'she would lay down her life to make sure that the program did not get shown.' Even after this discussion, the claimant orchestrated a campaign to discredit the program and have it boycotted by parents. Subsequently, some parents picketed the program, and placed flyers on cars."

The Board further found:

"The claimant told the pastor that she understood that if she took action against the program she would have to leave her employment. Nonetheless, she continued to actively challenge a program mandated by the parish which effectively undermined the activities of her employer. The claimant's activities were not protected under the First Amendment of the Constitution. *See Garcetti et al. v. Ceballos*, 126 S. Ct. 1951 (May 30, 2006). We find the claimant's refusal to act in accordance with the employer's policies was subordination constituting misconduct under Section 602A of the Act."

Accordingly, the Board likewise concluded that Czajka was discharged for misconduct connected with work and was subject to a disqualification of benefits under section 602(A) of the

6

1-07-1646

Illinois Unemployment Insurance Act. (Act) (820 ILCS 405/602(A) (West 2004)). In turn,

Czajka filed the instant action seeking administrative review of the Board's decision. The circuit

court affirmed the decision of the Board and Czajka now appeals.

ANALYSIS

On appeal from a decision denying unemployment compensation benefits, the duty of the

appellate court is to review the decision of the board and not that of the circuit court. *Richardson*

*Brothers v. Board of Review of Department of Employment Security*, 198 Ill. App. 3d 422, 428-

29, 555 N.E.2d 1126, 1130 (1990). Judicial review of an administrative agency's decision

extends to all questions of law and fact presented in the record. 735 ILCS 5/3-110 (West 2006).

The standard of review governing the agency's decision depends upon whether the question

presented is one of fact or law. *City of Belvidere v. Illinois State Labor Relations Board*. 181 Ill.

2d 191, 204, 692 N.E.2d 295, 302 (1998).

In examining an administrative agency's factual findings, a reviewing court does not weigh

the evidence or substitute its judgment for that of an administrative agency. *Abrahamson v.*

*Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117

(1992). The agency's purely factual findings are *prima facie* true and correct and will not be

disturbed unless contrary to the manifest weight of the evidence. *Jackson v. Board of Review of*

*the Department of Labor*, 105 Ill. 2d 501, 513, 475 N.E.2d 879, 885 (1985). Findings are against

the weight of the evidence when, from the record, an opposite conclusion is clearly evident.

*Zuaznabar v. Board of Review of Department of Employment Security*, 257 Ill. App. 3d 354, 358,

628 N.E.2d 986, 990 (1993). However, precedent instructs that we owe no deference to the

7

agency's conclusions of law. *Wrobel v. Department of Employment Security*, 344 Ill. App. 3d 533, 536, 801 N.E.2d 29, 33 (2003). Whether an employee's conduct amounted to misconduct under the Act is a question of law, which we review *de novo*. *Grigoleit Co. v. Department of Employment Security*, 282 Ill. App. 3d 64, 71, 669 N.E.2d 105, 110 (1996).

However, where the issue on appeal involves a mixed question of law and fact, deference will be given to the agency's decision and we will reverse only when the decision is clearly erroneous. *Moss v. Department of Employment Security*, 357 Ill. App. 3d 980, 984-85, 830 N.E.2d 663, 667-68 (2005).

> "[A] mixed question is one in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or whether the rule of law as applied to the established facts is or is not violated." *Moss*, 357 Ill. App. 3d at 984, 830 N.E.2d at 667.

Under the clearly erroneous standard, we give somewhat less deference to the agency than we would if the decision related solely to a question of fact, because the decision is based on fact-finding that is inseparable from the application of law to fact. *Carpetland U.S.A., Inc., v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 369, 776 N.E.2d 166, 177 (2002). The agency's decision will be deemed clearly erroneous only where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393, 763 N.E.2d 272, 280-81 (2001), quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948).

Here, we are presented with several questions that require application of certain facts to determine their legal effect. We must determine whether (1) there was a deliberate and willful violation of a rule or policy; (2) the rule or policy of the employing unit was reasonable; and (3) the violation either had harmed the employer or was repeated by the employee despite previous warnings. See 820 ILCS 405/602(A) (West 2004). Because reolution of these factors embrace mixed questions of law and fault, we will apply a clearly erroneous standard. See *Manning v. Department of Employment Security*, 365 Ill. App. 3d 553, 557, 850 N.E.2d 244, 247 (2006).

The Act (820 ILCS 405/100 *et seq.* (West 2004)) provides economic relief to alleviate economic distress caused by involuntary unemployment. *AFM Messenger Service*, 198 Ill. 2d at 396, 763 N.E.2d at 282. While unemployment insurance benefits are a conditional right and the burden of establishing eligibility rests with the claimant, the Act must be liberally interpreted to favor the awarding of benefits. *Lachenmyer v. Didrickson*, 263 Ill. App. 3d 382, 388, 636 N.E.2d 93, 98 (1994); *Adams v. Ward*, 206 Ill. App. 3d 719, 723, 565 N.E.2d 53, 56 (1990). However, we nonetheless recognize that the Act was not meant to provide benefits to employees discharged for their own misdeeds. *Siler v. Department of Employment Security*, 192 Ill. App. 3d 971, 974, 549 N.E.2d 760, 762 (1989).

Individuals who are discharged for misconduct are ineligible to receive unemployment benefits under the Act. Section 602(A) of the Act (820 ILCS 405/602(A) (West 2004)), provides the guidepost for determining disqualifying misconduct:

"[T]he deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such

violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit."

*In Manning v. Department of Employment Security*, 365 Ill. App. 3d 553, 557, 850 N.E.2d 244, 248 (2006), we recognized that three elements must be proven to establish misconduct under the Act: (1) that there was a "deliberate and willful" violation of a rule or policy; (2) the rule or policy of the employing unit was reasonable; and (3) that the violation either has harmed the employer or was repeated by the employee despite previous warnings.

Addressing the first element, our focus is upon whether Czajka deliberately and willfully violated a rule or policy. In this regard, our inquiry embraces questions of law and fact because it involves considering whether the facts support the Board's findings and conclusions of a willful and deliberate violation. See *AFM Messenger Service*, 198 Ill. 2d at 392, 763 N.E.2d at 280. In the administrative hearing, the Board determined that Czajka's refusal to act in accordance with her employer's policies warranted "discharge for misconduct connected with work." The Board found that when Czajka objected to the program and voiced her concerns to the pastor, she was told that as a member of the Parish, she was expected to support its policies and if she took action against the program, she would have to leave her employment. The Board further found that in response, Czajka told the pastor that she believed the program was pornography and advised that "she would lay down her life to make sure that the program did not get showed" and thereafter orchestrated a campaign to discredit the program and have it boycotted by the parents. The Board then concluded that despite the warnings, Czajka "continued to actively challenge a program mandated by the parish which effectively undermined the activities of her employer."

10

Although we are mindful that a reviewing court will not reweigh the evidence in the rubric of administrative review, because the Board's decision presents a mixed question of law and fact, our function is to determine whether the decision is clearly erroneous. *Carpetland U.S.A.*, 201 Ill. 2d at 369, 776 N.E.2d at 177.

In the instant proceedings, our review of the record leads to the inescapable conclusion that the Board's findings of a deliberate and willful violation is indeed clearly erroneous. First and foremost, although the Board found that Czajka continued to actively challenge a program mandated by the Parish even after Reverend Treyes' warning, that finding patently confuses the sequence of events highlighted in the record. Moreover, the finding is actually refuted by uncontroverted evidence establishing that Czajka was first informed of her obligation to act in accordance with her employer's policies on November 14, 2005, after she had already spoken to parishioners. The meeting also occurred after the Pastor was informed that individuals opposed to the program had placed flyers on cars and threatened to alert the media. Second, the record is barren of any evidence even suggesting that Czajka picketed the program or placed flyers on cars. Third, notwithstanding her tacit opposition to the program, there is utterly no evidence that Czajka orchestrated any campaign to discredit the program after her discussion with the pastor. It is therefore apparent that the Board's finding of a violation controverts the maxim *post hoc, ergo propter hoc*, the fallacy of confusing sequence with consequence. "Here, as elsewhere in the law, *propter hoc* must be distinguished from *post hoc*". *Hennigan v. Ouachita Parish School Board*, 749 F.2d 1148, 1152 (5th Cir. 1985). See also Black's Law Dictionary 205 (8th ed. 2004), (*post hoc*).

Even assuming the existence of an evidentiary basis for the Board's factual finding of a violation, we cannot conclude from the record that Czajka's conduct was performed willfully and deliberately. Willful conduct is a conscious act made in violation of company rules, when the employee knows it is against the rules. *Livingston v. Department of Employment Security*, 375 Ill. App. 3d 710, 716, 873 N.E.2d 444, 451 (2007), citing *Lachenmyer*, 263 Ill. App. 3d at 389, 636 N.E.2d at 99 ("[w]illful conduct stems from an employee's awareness of and conscious disregard for, a company rule") Moreover, to disqualify an employee from receiving unemployment compensation, an employer must satisfy a higher burden than merely proving that an employee should have been discharged. *Zuaznabar*, 257 Ill. App. 3d at 358-59, 628 N.E.2d at 990.

Here, notwithstanding the hallmark of deferential review, we are unable to conclude that Czajka's conduct was willful or deliberate. Although she concededly opposed the program and even actively spoke against its implementation, there simply is no evidence demonstrating that she engaged in the conduct with an awareness of any rule or policy forbidding her from expressing her views to parishioners. Notably, when Reverend Treyes first learned of Czajka's beliefs during a causal lunch preceding the film showing, he provided no mention or warning that speaking against the program would violate any policy or rule. Given that Czajka was first apprised of the rule by Reverend Treyes during her November 14 meeting, we believe that the actual sequence of events necessarily undermines the Board's conclusion that Czajka's actions were willful or deliberate.

We likewise conclude that Czajka's statement to Reverend Treyes during the meeting that she considered the video included in the diocese's program "a form of pornography," and that

"she would lay down her life to prevent its showing to students" did not constitute a willful and deliberate violation of the employer's policy. The statement clearly was made during a heated argument between Czajka and the pastor and while a single flurry of temper between a worker and a supervisor may suffice to warrant discharge in an at-will relationship, it is not enough to deny unemployment benefits. *Oleszczuk v. Department of Employment Security*, 336 Ill. App. 3d 46, 52, 782 N.E.2d 808, 813 (2002). Nor is mere argument with a supervisor without using abusive language or threats sufficient to establish discharge for misconduct under the Act. *Gee v. Board of Review of the Department of Labor*, 136 Ill. App. 3d 889, 896, 483 N.E.2d 1025, 1029-30 (1985).

The second element that must be proven to establish misconduct under the Act is that the rule or policy of the employing unit was reasonable. See *Manning*, 365 Ill. App. 3d at 557, 850 N.E.2d at 248. A reasonable rule encompasses standards of behavior that an employer has a right to expect from an employee. *Bandemer v. Department of Employment Security*, 204 Ill. App. 3d 192, 195, 562 N.E.2d 6, 7 (1990). Notably, such a rule need not be written or otherwise formalized. *Caterpillar, Inc. v. Department of Employment Security*, 313 Ill. App. 3d 645, 654, 730 N.E.2d 497, 505 (2000). Nor is the employer required to prove the existence of the rule by direct evidence. *Greenlaw v. Department of Employment Security*, 299 Ill. App. 3d 446, 448, 701 N.E.2d 175, 177 (1998). Yet, we may reach that determination "through a common sense realization that some behavior intentionally and substantially disregards an employer's interests." *Stovall v. Department of Employment Security*, 262 Ill. App. 3d 1098, 1102, 640 N.E.2d 299, 303 (1994).

1-07-1646

Here, the Board argues that the parish had a legitimate business interest in presenting the diocese's program on inappropriate touching. In furtherance of that interest, the parish operated a school and a Sunday school with the intention of presenting this program to educate its students. We agree with the Board that the program was part of the parish's legitimate business operations. Lest there be any misunderstanding, however, it should be clear that the rule or policy we consider does not concern the merits of the diocese's program. Manifestly, the desirability or propriety of that decision is clearly beyond the scope of our inquiry. Rather, the rule at issue is the requirement that employees act in accordance with the policy mandated by the diocese. Or, as alternatively stated, that employees such as Ms. Czajka refrain from actively challenging programs implemented by the parish.

We further concur in the Board's position that the rule or policy articulated does indeed encompass standards of behavior which an employer has a right to expect from an employee. See *Bandemer*, 204 Ill. App. 3d at 195, 562 N.E.2d at 7. However, at the same time, we recognize that the reasonable rule or policy a claimant must violate is one "governing the individual's behavior in performance of his work." 820 ILCS 405/602(A) (West 2004). As our supreme court recognized in *Jackson v. Board of Review*, not every violation of a company rule will constitute misconduct. "There must be some nexus between the rule and the employment." *Jackson*, 105 Il. 2d at 512, 475 N.E.2d at 885.

In this case, Czajka posits that the rule or policy she allegedly violated had no nexus to her employment at the diocese. She asserts that the diocese's program was implemented by the parish school and not the church, and that her work as a sacristan performing maintenance at Saint

14

Liborius had nothing to do with the implementation of the program. Although she concedes that her actions in opposing the program could have potentially affected the performance of her work as a sacristan, she argues that there is no evidence that her work suffered as a result of those actions.

Czajka places reliance upon *Caterpillar, Inc. v. Fehrenbacher*, 286 Ill. App. 3d 614, 616 N.E.2d 710 (1997), where the defendant was fired for violating the company rule against the display of union material on company property. At the time, proposed legislation ("S-55") sought to bar hiring permanent replacements for striking union workers. Defendant refused to remove a sign from the window of his truck, which he parked in the company parking lot. The sign read, "Support S-55 Stop Scabs From Taking Union Jobs." *Fehrenbacher*, 286 Ill. App. 3d at 616, 676 N.E.2d at 711-12. In reinstating the Board's decision that the rule did not govern defendant in the performance of his work, the *Fehrenbacher* court first acknowledged that defendant's behavior was "connected with his work" in that it took place on his employer's property, related to his employment and the conditions thereof, and had the reasonable potential to affect the performance of his duties. *Fehrenbacher*, 286 Ill. App. 3d at 623, 676 N.E.2d at 716. However, the court nonetheless concluded:

> "[P]lacing the sign in the window of his truck was not 'connected with his work,' in the sense that it occurred outside the actual place of work, did not relate directly to the performance of his job as a lathe operator, and had no actual direct or indirect effect on the performance of his duties (other than, of course, leading to his discharge)." *Fehrenbacher*, 286 Ill. App. 3d at 623, 676 N.E.2d at 716.

15

However, other decisions afford a more expansive or liberal interpretation of the employer's rules or policies. Thus, in *Manning v. Department of Employment Security*, we held that a hostile, intimidating and vulgar message left on a co-worker's home answering machine substantially disregarded the employer's business and thereby constituted the requisite misconduct. *Manning*, 365 Ill. App. 3d at 558, 850 N.E.2d at 249. Similarly, in *Caterpillar, Inc. v. Department of Employment Security*, we determined that the existence of a policy requiring employees to stop making unwanted contact with a co-worker was a reasonable rule or policy. *Caterpillar Inc.*, 313 Ill. App. 3d 645, 654, 730 N.E.2d 497, 504-05 (2000).

We find the rationale of *Manning* and *Caterpillar* to be persuasive. The fact that the Board's rule encompassed actions that did not directly relate to Czajka's duties as a sacristan coupled with the understanding that they may have taken place off duty and outside the church's property, do not negate a nexus between the parish's rule and Czajka's employment. Therefore, we find that the rule or policy of Saint Liborius requiring employees to act in accordance with the policies of the parish was a reasonable rule within the purview of section 602(A) of the Act.

We next address the third and final requirement that to establish misconduct under the Act, the violation either has harmed the employer or was repeated by the employee despite previous warnings. See *Manning*, 365 Ill. App. 3d at 557, 850 N.E.2d at 248. Czajka submits that the Board did not establish that her employer suffered actual harm as a result of her conduct.

In *Adams v. Ward*, 206 Ill. App. 3d 719, 729, 565 N.E.2d 53, 59 (1990), absence of actual harm undermined the Board's finding of misconduct where company uniforms improperly discarded by the claimant were retrieved by another employee. An identical result obtained in

16

*Zuaznabar*, where we rejected the argument that the Board could infer harm because a bus driver's unauthorized stops somehow placed Greyhound passengers at risk. *Zuaznabar*, 257 Ill. App. 3d at 357, 628 N.E.2d at 989. We determined that a mere potential for injury is not enough to establish the third element for a finding of statutory misconduct, *Zuaznabar*, 257 Ill. App. 3d at 357, 628 N.E.2d at 989.

However, we do recognize that there is a split of authority as to whether the prospect of future harm constitutes harm within the making of section 602(A) of the Act. 820 ILCS 405/602(A) (West 2004). For example, in *Bandemer*, where the sales manager failed to notify the store manager that she was unable to open the store because of sickness, we determined that the threat of future financial loss resulting from the store's closure was harmful to the employer. *Bandemer*, 204 Ill. App. 3d at 195, 562 N.E.2d at 8. Similarly, in *Winklmeier v. Board of Review of the Department of Labor*, 115 Ill. App. 3d 154, 155-56, 450 N.E.2d 353, 354-55 (1983), we found that misconduct stemming from the filing of false medical claims could result in higher insurance costs and financial loss to the company. Likewise, in *Manning*, although the voice mail message left by the claimant may not have directly harmed the employer, it was potentially harmful because the use of hostile and intimidating language to a co-worker could adversely affect the work environment. *Manning*, 365 Ill. App. 3d at 558, 850 N.E.2d at 248.

In the case at bar, the Board found that the requisite element of harm was established by Czajka's actions, which "effectively undermined the activities of her employer." Yet, that finding is bereft of any support in the record, certainly not from Reverend Treyes' testimony. We have previously rejected the argument that Czajka orchestrated a campaing to discredit the program

17

after she was warned against such action; even assuming she had done so, there is simply no basis to conclude that her actions had any modicum of success. Reverend Treyes provided no testimony even suggesting that implementation of the program was at any time delayed, disrupted or derailed by the actions of Czajka, or any other individual. Therefore, we find the Board's conclusions regarding harm, either actual or potential, are entirely speculative and conjectural.

We last address Czajka's claim that her actions were protected by the free exercise clause of the first amendment. Here, she seeks reliance upon the holding of the United States Supreme Court that a "person may not be compelled to choose between the exercise of a first amendment right and participation in an otherwise available public program." *Thomas v. Review Board of Indiana Employment Security Division*, 450 U.S. 707, 716, 67 L. Ed. 2d 624, 633, 101 S. Ct. 1425, 1431 (1981). Czajka submits that the denial of unemployment compensation benefits to a worker based on conduct that is "rooted in religion" violates the First Amendment. See *Frazee v. Illinois Department of Employment Security*, 489 U.S. 829, 834, 103 L. Ed. 2d 914, 920, 109 S. Ct. 1514, 1517-18 (1989).

Although Czajka's argument raises some challenging questions, we have already rejected the decision of the Board on nonconstitutional grounds, finding the decision to be clearly erroneous. Having done so, we adhere to the rule reiterated in *In re E.H.*, 224 Ill. 2d 172, 181, 863 N.E.2d 231, 236 (2006), that courts must avoid considering constitutional questions without first exhausting all potential nonconstitutional grounds for resolving the case. Were we to decide the case on the constitutional grounds articulated by Czajka, we would be required to state in writing that our decision cannot rest upon an alternative ground. See 210 Ill. 2d R. 18(c)(4).

1-07-1646

Adherence to that Rule necessarily impacts the efficacy of our administrative review. Having based our decision on such alternative ground, we decline Czajka's invitation to address the constitutional issue she has presented.

CONCLUSION

For the foregoing reasons, we find that the decision denying Carmen Czajka's claim for unemployment insurance benefits was clearly erroneous as being the result of an improper application of the law. We reverse the order of the circuit court affirming the order of the Board and remand with directions to vacate the order of the Board and conduct a hearing to determine the amount of unemployment benefits to which Czajka is entitled.

Reversed and remanded with directions.

FITZGERALD SMITH, P.J., with O'MARA FROSSARD, J., concur.

1-07-1646

| | |
|---|---|
| Please use following form:<br><br>Complete TITLE of Case | CARMEN T. CZAJKA,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>IDES, Bd. of Review, St. Liborius School,<br><br>Defendant-Appellee. |
| Docket Nos.<br><br>COURT<br><br>Opinion Filed | No. 1-07-1646<br><br>Appellate Court of Illinois<br>First District, 1st Division<br><br>December 5, 2008<br><br>(Give month, day and year) |
| JUSTICES | JUSTICE TOOMIN delivered the opinion of the court:<br><br>FITZGERALD SMITH, P.J., and O'MARA FROSSARD, J., concur. |
| APPEAL from the Circuit Court of Cook County; the Hon._____, Judge Presiding. | Lower Court and Trial Judge(s) in form indicated in margin:<br><br>Appeal from the Circuit Court of Cook County.<br><br>The Hon. Sheldon Garner, Judge Presiding. |
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith, of Chicago<br><br><br><br>Joseph Brown, of counsel). Also add attorneys for third-party appellantsand/or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br><br>For Appellant, Alonzo Rivas, M. Garrett Hohimer, and Marisel A. Hernandez of Jacobs, Burns, Orlove, Stanton & Hernandez, of Chicago.<br><br>For Appellee, Lisa Madigan, Attorney General, Michael A. Scodro, Solicitor General, State of Illinois.<br>(Timothy K. McPike, Assistant Attorney General).<br><br>(USE REVERSE SIDE IF NEEDED) |

1-07-1646