# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

### *C.Capp's LLC v. Jaffe*, 2014 IL App (1st) 132696

</div>

| | |
|---|---|
| Appellate Court Caption | C.CAPP'S LLC, an Illinois Limited Liability Company, Plaintiff-Appellant, v. AARON JAFFE, as Chairman of the Illinois Gaming Board, and LEE GOULD, MICHAEL HOLEWINSKI, and MARIBETH VANDER WEELE, as Members of the Illinois Gaming Board and the ILLINOIS GAMING BOARD, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-13-2696 |
| Filed | September 23, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of plaintiff's application for a video game terminal operator's license without a hearing was not a clearly erroneous decision by the Illinois Gaming Board, since the Board's rules required that plaintiff's petition for a hearing had to assert that the reasons the Board gave for denying a license were false, but plaintiff admitted that she was associated professionally and personally with a convicted felon, her husband, even though she did deny that she knew the company where she was employed had been the subject of investigations involving illegal gambling and other crime; therefore, plaintiff did not state a *prima facie* case for a hearing, the denial of a license was affirmed, and plaintiff's only option would be to reapply in one year and allow the Board to evaluate at that time whether her circumstances had changed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-27922; the Hon. Mary Mikva, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Law Office of George E. Becker P.C., of Chicago (George E. Becker, of counsel), for appellant.

Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Timothy M. Maggio, Assistant Attorney General, of counsel), for appellees.

Panel

JUSTICE LIU delivered the judgment of the court, with opinion. Presiding Justice Simon and Justice Neville concurred in the judgment and opinion.

**OPINION**

¶ 1   This appeal stems from a decision of the Illinois Gaming Board (Board) to deny plaintiff, C.Capp's LLC (Capps), a video game terminal operator's license pursuant to section 45 of the Illinois Video Gaming Act (Act) (230 ILCS 40/45 (West 2012)). Capps contends on appeal that: (1) the requirements for seeking a hearing before the Board violate due process; and (2) the Board's decision to deny it a terminal operator's license without a hearing was against the manifest weight of the evidence. For the following reasons, we affirm.

¶ 2                      BACKGROUND
¶ 3                   A. Capps, the Applicant
¶ 4   Capps is an Illinois limited liability company owned and managed exclusively by Gail Perez. In February 2010, Perez formed Capps for the express purpose of becoming a "terminal operator," as defined by the Act. A "terminal operator" is a person or entity licensed under the Act that owns, services, and maintains video gaming terminals for placement in licensed establishments. 230 ILCS 40/5 (West 2012). "Video gaming terminals" are electronic machines that accept cash or electronic cards or vouchers for the purpose of allowing users to play games such as video poker or blackjack. 230 ILCS 40/5 (West 2012).

¶ 5              B. Capps Applies for a Terminal Operator's License
¶ 6   Capps applied with the Board to obtain a terminal operator's license in November 2010. The Board, however, denied Capps' application by a unanimous vote. In a letter dated May 22, 2012, the Board informed Perez of the denial and gave its reasoning. It explained:

> "Staff's investigation revealed that C.Capp's and its owner fail to meet the qualifications required in the Video Gaming Act, 230 ILCS 40/45 and Board Rule 1800.420. Specifically, you as 100% Owner and President continue to associate both professionally and personally with Thomas Perez, a convicted felon. You also are employed by Tomm's Redemption, a company that has been the subject of Federal and State investigations involving illegal gambling and other crime."

- 2 -

¶ 7        On June 1, 2012, Capps petitioned the Board for a hearing. 11 Ill. Adm. Code 1800.615(c) (2011). Capps acknowledged in its petition that Gail Perez was married to Thomas Perez and that Thomas Perez had pleaded guilty to making false statements on his tax returns. However, it asserted: (1) that Gail Perez was legally separated from Thomas Perez in 2002; (2) that she "had no choice but to associate with Thomas Perez the last 10 years if for nothing else to discuss and agree on the day-to-day activities of their two children"; (3) that she was never a shareholder, director, or officer of Tomm's Redemption, Inc. (Tomm's Redemption); (4) that she was "without knowledge of any state or federal investigations involving gambling as they relate to Thomas Perez"; (5) that she had demanded that Thomas Perez and/or Tomm's Redemption move its offices to a different address; (6) that she had submitted her resignation as an employee of Tomm's Redemption; and (7) that she was willing to file for dissolution of marriage from Thomas Perez.

¶ 8        On June 21, 2012, the Board denied Capps' request for a hearing. In a letter dated June 26, 2012, the Board explained that Capps' "request did not establish a prima facie case as required by the [*sic*] Section 1800.615 of the Board's Adopted Rules."

¶ 9                                    C. Administrative Review

¶ 10        On July 20, 2012, Capps filed a petition for administrative review in the circuit court of Cook County. Capps alleged, *inter alia*, that the Board's decision to deny its application for a terminal operator's license without a hearing was contrary to the law and against the manifest weight of the evidence. Capps requested the court to either: (1) require the Board to issue it a terminal operator's license; or (2) order the Board to conduct an evidentiary hearing based on its petition for a hearing.

¶ 11        On August 28, 2012, the Board answered Capps' petition by filing the administrative record. As pertinent here, the Board included as part of the record a summary report (the report) that was prepared in connection with Capps' application. The report referred to the investigation and information that the Board considered when reviewing Capps' application for a terminal operator's license. The Board had not provided a copy of the report to Capps prior to August 28, when it filed a copy as part of the record.

¶ 12        The parties subsequently briefed the petition. Capps argued, in its brief, that it had established a *prima facie* case that mandated a hearing before the Board and that the Board's decision to deny it a terminal operator's license was against the manifest weight of the evidence. The Board, meanwhile, responded: (1) that its decision to deny Capps a hearing was not clearly erroneous; (2) that its denial of a hearing did not violate any due process rights allegedly afforded to Capps; and (3) that its denial of the license application was not against the manifest weight of the evidence based on Gail Perez's continued association with Thomas Perez and Tomm's Redemption.

¶ 13        On May 17, 2013, the court ordered supplemental briefing on the limited issue of due process, which had been raised for the first time in the Board's response brief. Capps argued, in its supplemental brief, that "[t]he procedures of the *** Board are a clear violation of the due process rights of an Applicant in that it has denied a hearing based upon an internal report, which the Applicant was not given the opportunity to refute and which contained erroneous information." The Board, in response, maintained that Capps did "not have a legitimate claim of entitlement to a property right in having its application for a Terminal Operator's License granted" and, therefore, was not denied due process.

¶ 14    At a hearing on July 26, 2013, the court denied Capps' petition for administrative review. The court found that Capps was not denied due process because "there simply isn't a property interest in an application for a gaming license." Further, the court found that the Board's decision to deny Capps a hearing was not against the manifest weight of the evidence because "the applicant did not make out a prima facie case that she was suitable for licensure."

¶ 15    Capps timely appealed from the circuit court's order affirming the decision of the Board. We therefore have jurisdiction pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. May 30, 2008).

¶ 16                                    ANALYSIS

¶ 17    Our review of the Board's decision is governed by the Administrative Review Law (735 ILCS 5/3-102 (West 2012)). 230 ILCS 10/17.1(b) (West 2012).[1] In administrative review cases, we review the decision of the administrative agency, not the determination of the circuit court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006).

¶ 18                                  A. Due Process

¶ 19    Capps first contends on appeal that the Board's requirements for seeking a hearing do not comport with due process. Specifically, Capps objects to the Board's possession of a "secret report," arguing that it is "impossible" to establish the requisite *prima facie* case for a hearing when the Board is allowed to use such a report to deny petitions for hearing.

¶ 20                                     1. Waiver

¶ 21    The Board initially maintains that Capps has waived its due process argument by failing to raise it before the agency. In support, the Board cites *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 396-97 (2002), where our supreme court stated the general rule that "issues or defenses not raised before the administrative agency will not be considered for the first time on administrative review."

¶ 22    In *Carpetland*, the supreme court found a plaintiff's due process claim waived where, like here, it was not raised before the administrative agency and was asserted for the first time in the circuit and appellate courts. *Id.* The supreme court explained:

> " '[I]t is advisable to assert a constitutional challenge on the record before the administrative tribunal, because administrative review is confined to the proof offered before the agency. Such a practice serves the purpose of avoiding piecemeal litigation and, more importantly, allowing opposing parties a full opportunity to present evidence to refute the constitutional challenge.' " *Id.* at 397 (quoting *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 278-79 (1998)).

¶ 23    Here, the Board's claim of waiver is not well taken due to its omission of certain adverse facts. Specifically, the Board fails to note that the issue of due process was briefed and argued in the circuit court only after the Board, itself, raised the issue in its response brief. The Board also fails to acknowledge that it never argued in the circuit court that Capps' due process argument was waived. The doctrine of waiver is a limitation on the parties and not on this court. *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 202 (2007). Since the

_____

[1]We note that the provisions of the Riverboat Gambling Act are incorporated into the Video Gaming Act to the extent there is no conflict between the two acts. 230 ILCS 40/80 (West 2012).

- 4 -

Board is ultimately responsible for bringing the issue of due process to the fore, we decline to apply waiver in this case and choose to address Capps' argument on its merits.

¶ 24　　　　　　　　　　2. Whether Capps Was Entitled to Notice and a Hearing

¶ 25　　"It is fundamental that the constitutional guarantees of procedural due process only become operative where there is an actual or threatened impairment or deprivation of 'life, liberty or property.' " *Polyvend, Inc. v. Puckorius*, 77 Ill. 2d 287, 293-94 (1979) (quoting U.S. Const., amend. XIV). "Therefore, the starting point in any procedural due process analysis is a determination of whether one of these protectable interests is present, for if there is not, no process is due." *Id.* at 294.

¶ 26　　"The United States Supreme Court [has] held that '[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.' " *Suburban Downs, Inc. v. Illinois Racing Board*, 316 Ill. App. 3d 404, 413 (2000) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). "A legitimate claim of entitlement may arise from statute, regulation, municipal ordinance, or express or implied contract." *Id.*

¶ 27　　In this case, Capps does not argue that it had a protectable property interest in a terminal operator's license.[2] Capps, rather, claims that it was entitled to due process based on the "contested case" provisions of the Illinois Administrative Procedure Act (5 ILCS 100/1-1 *et seq.* (West 2012)), which require notice and a hearing (5 ILCS 100/10-25(a) (West 2012)). Capps argues that "[a]lthough a citizen may not be entitled to a fair hearing by the constitutional guarantee of due process, the [A]dministrative [Procedure] [A]ct *** should in some manner comport with due process standards of fundamental fairness." According to Capps, fundamental fairness in this case "required the Board to disclose its allegations against [Capps], so [that Capps] could state a prima facie case for a hearing."

¶ 28　　We find that Capps' due process argument necessarily fails given Capps' concession that it has no protectable property interest in a terminal operator's license, a necessary component of a procedural due process claim. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013); *Suburban Downs*, 316 Ill. App. 3d at 413. Moreover, insofar as Capps is arguing that it is statutorily entitled to notice and a hearing under the "contested cases" provisions of the Illinois Administrative Procedure Act, we find that claim to be without merit as well.

¶ 29　　The provisions concerning "contested cases" apply only "[w]hen any licensing is required by law to be preceded by notice and an opportunity for a hearing." 5 ILCS 100/10-65(a) (West 2012). Here, the denial of a terminal operator's license is not required by law to be preceded by notice and a hearing; rather, the Board can deny an application for a terminal operator's license without ever holding a hearing. See 11 Ill. Adm. Code 1800.615(a), (f) (2011). It is only after the Board has denied an application for a license that the applicant may contest the denial by submitting a request for hearing to the Board. 11 Ill. Adm. Code 1800.615(c) (2011). Even then, the Board may deny a request for hearing "if the statement of the reasons and facts that it contains does not establish a prima facie case or fails to comply with any of the other requirements of this Section." 11 Ill. Adm. Code 1800.615(g) (2011). In sum, the Board's rules give the Board discretion to grant a hearing in connection with an application for a terminal

---

[2]Capps specifically argues, in its reply brief, that "[t]he Plaintiff is not arguing entitlement to a license."

operator's license; however, they by no means *require* the Board to grant a hearing before denying an application so as to trigger the provisions for contested cases. We therefore conclude that Capps is not entitled to due process or notice and a hearing under the Illinois Administrative Procedure Act.

¶ 30                          B. The Board's Denial of a Terminal Operator's
License Without a Hearing

¶ 31      Capps next challenges the Board's decision to deny it a terminal operator's license without a hearing. Capps maintains that Gail Perez met all of the criteria for a terminal operator's license and that "a decision denying a license to a lady because she fathered children with a man convicted of a 17 year old tax crime is against the manifest weight of the evidence." Capps claims that the Board, at a minimum, should have granted a hearing where it filed a petition that addressed the Board's reasons for denying a license.

¶ 32      The Board argues that it properly denied Capps a terminal operator's license without a hearing where Capps: (1) did not contest that Tomm's Redemption was the subject of a criminal investigation; and (2) affirmatively admitted facts supporting the Board's other objections. The Board maintains that Capps is ultimately asking this court to reweigh the evidence and substitute its judgment for that of the Board, which is not this court's function on administrative review.

¶ 33                                 1. Standard of Review

¶ 34      Before addressing the Board's decision, we must first determine the appropriate standard of review. Under the Administrative Review Law, the applicable standard of review depends upon whether the question presented is one of fact or law or a mixed question of law and fact. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001).

¶ 35      In the case at bar, Capps does not specifically challenge any of the factual findings made by the Board. Instead, it challenges the Board's ultimate decision to deny a terminal operator's license without a hearing based on those findings. This is clearly a mixed question of law and fact in that it " 'involv[es] an examination of the legal effect of a given set of facts.' " *Id.* at 391 (quoting *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998)). In other words, " 'the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or *** whether the rule of law as applied to the established facts is or is not violated.' " *Id.* (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982)).

¶ 36      When an issue involves a mixed question of law and fact, "deference will be given to the agency's decision and we will reverse only when the decision is clearly erroneous." *Czajka v. Department of Employment Security*, 387 Ill. App. 3d 168, 173 (2008). "The agency's decision will be deemed clearly erroneous only where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " (Internal quotation marks omitted.) *Id.* (quoting *AFM Messenger Service*, 198 Ill. 2d at 393).

¶ 37                               2. The Board's Determination

¶ 38      The Board determined in this case that Capps did not meet the requirements for obtaining a terminal operator's license. Specifically, the Board found that Gail Perez, Capps' owner and

manager: (1) associated professionally and personally with Thomas Perez, a conviction felon; and (2) was employed by Tomm's Redemption, a company that had been the subject of federal and state investigations involving illegal gambling and other crime.

¶ 39    As an initial matter, we address the issue of whether the Board was required to tender a copy of the report that it reviewed when considering Capps' request for a license. Section 6(d) of the Riverboat Gambling Act provides:

> "All information, records, interviews, reports, statements, memoranda or other data supplied to or used by the Board in the course of its review or investigation of an application for a license or a renewal under this Act shall be privileged, strictly confidential and shall be used only for the purpose of evaluating an applicant for a license or a renewal. Such information, records, interviews, reports, statements, memoranda or other data shall not be admissible as evidence, nor discoverable in any action of any kind in any court or before any tribunal, board, agency or person, except for any action deemed necessary by the Board." 230 ILCS 10/6(d) (West 2012).

We find that the language of section 6(d) is clear and unambiguous and supports the Board's rationale for not submitting a copy of the report to Capps until it was "deemed necessary" to include it as part of the administrative record on review.

¶ 40    Under the Act, the Board has discretion to issue or deny a terminal operator's license pursuant to the criteria set forth in section 9 of the Riverboat Gambling Act (230 ILCS 10/9 (West 2012)). 230 ILCS 40/45(a) (West 2012). The Board's rules also provide, however, that "the Board may not grant any video gaming license until the Board is satisfied that the applicant is," among other things:

> "1) A person of good character, honesty and integrity;
>
> 2) A person whose background, including criminal record, reputation and associations, is not injurious to the public health, safety, morals, good order and general welfare of the people of the State of Illinois; [and]
>
> 3) A person whose background, including criminal record, reputation and associations, does not discredit or tend to discredit the Illinois gaming industry or the State of Illinois[.]" 11 Ill. Adm. Code 1800.420(a)(1)-(3) (2013).

The burden is ultimately on the applicant to "demonstrate [its] suitability for licensure." 230 ILCS 40/45(a) (West 2012). Moreover, as pertinent here, any person who holds significant influence or control in an applicant company must be in compliance with the Act and the Board's rules. 11 Ill. Adm. Code 1800.430(b)(2) (2012).

¶ 41    Here, there is no dispute that at the time Capps filed its application for a terminal operator's license: (1) Gail Perez associated both professionally and personally with Thomas Perez; (2) Thomas Perez was a convicted felon; (3) Gail Perez worked for Tomm's Redemption; and (4) Tomm's Redemption was the subject of federal and state investigations involving illegal gambling and/or other unlawful acts. The only real issue is whether the Board properly exercised its discretion in determining whether these associations were injurious to the public health, safety, morals, good order and general welfare of the people of the State of Illinois, and whether they discredited or tended to discredit the Illinois gaming industry or the State of Illinois. It is not our function to reweigh the evidence or substitute our judgment for that of the administrative agency. *Lojek v. Department of Employment Security*, 2013 IL App (1st) 120679, ¶ 31. We therefore cannot say, under the circumstances, that the Board clearly erred in denying Capps a terminal operator's license. See *Czajka*, 387 Ill. App. 3d at 173.

¶ 42    Capps argues that the Board should have granted it a hearing based on the facts asserted in its petition. We disagree. The Board's rules require an applicant to include in its request for a hearing "[d]etailed reasons why and the facts upon which the petitioner will rely to show that the petitioner is suitable for licensure, including specific responses to any facts enumerated in the Board's notice of denial." 11 Ill. Adm. Code 1800.615(d)(2) (2011). The rules provide that "[t]he Board may deny a request for hearing if the statement of the reasons and facts that it contains does not establish a prima facie case or fails to comply with any of the other requirements of this Section." 11 Ill. Adm. Code 1800.615(g) (2011).

¶ 43    Here, Capps did not assert in its petition for hearing that the Board's reasons for denying it a terminal operator's license were, in fact, false. Instead, it admitted that all but one of the Board's reasons were true–Capps stated that it had no knowledge as to any federal or state investigations of Thomas Perez–and sought to explain why it should have been granted a license regardless. We cannot say that Capps' petition stated a *prima facie* case for a hearing where it simply reaffirmed the Board's reasons for denying it a terminal operator's license in the first place. Furthermore, we find that the Board was not required to grant Capps a hearing simply because Gail Perez "demanded" that Tomm's Redemption move its offices; "submitted her resignation" as an employee of Tomm's Redemption; and was "willing to file for dissolution of marriage from Thomas Perez if this remains the only stumbling block to obtaining a license." These were nothing more than promises that Gail Perez was in the process of cutting her ties with Tomm's Redemption and Thomas Perez, with no bearing on the Board's determination that she was still associated with both. The proper avenue for Capps was not to file a petition for hearing alleging that Gail Perez was working on distancing herself from Tomm's Redemption and Thomas Perez; it was to reapply for a license after "one year from the date on which the final order of denial was voted upon by the Board." 11 Ill. Adm. Code 1800.560(b) (2013). Only at that point could the Board realistically evaluate whether there was a change in circumstances. We find that the Board's decision to deny Capps a terminal operator's license without a hearing was not clearly erroneous.

¶ 44    Accordingly, we affirm the judgment of the circuit court of Cook County.

¶ 45    Affirmed.