NOTICE
Decision filed 12/02/14. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2014 IL App (5th) 130209

NO. 5-13-0209

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| WILLIAM F. EASTHAM III, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | |
| | ) | No. 09-MR-57 |
| THE HOUSING AUTHORITY OF JEFFERSON | ) | |
| COUNTY and THE BOARD OF REVIEW OF THE | ) | |
| DEPARTMENT OF EMPLOYMENT SECURITY, | ) | Honorable |
| | ) | Mark R. Stanley, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Presiding Justice Cates and Justice Goldenhersh concurred in the judgment and opinion.

**OPINION**

¶ 1     The plaintiff, William F. Eastham III, was required to submit to a random drug test by his employer, the Housing Authority of Jefferson County. The plaintiff informed his supervisor that he believed he would fail the drug test because he had smoked marijuana during a recent vacation. His employment was terminated before the results of the drug test were available. The test subsequently came back negative. The plaintiff's claim for unemployment insurance benefits was denied. The basis for this decision was a policy of the employer which provided that employees may not use or be under the influence of

1

alcohol or any controlled substance "while in the course of employment." The plaintiff filed a petition for administrative review. The circuit court reversed the administrative decision, finding that (1) the phrase "while in the course of employment" includes only the times during which an employee is performing work duties; and (2) the policy is unreasonable to the extent it can be interpreted to regulate an employee's conduct outside of work. The defendants, the Housing Authority of Jefferson County and the Board of Review of the Department of Employment Security, appeal. They argue the circuit court erred in reaching both of these conclusions. We affirm.

¶ 2    The plaintiff was employed by the Housing Authority of Jefferson County (Housing Authority) in its maintenance facility. The Housing Authority has a drug- and alcohol-free workplace policy addressing drug and alcohol use by its employees. The policy provides, in pertinent part, that the "possession, use, consumption or being under the influence of a controlled substance *** while on Housing Authority premises and/or while in the course of employment of the Housing Authority" violates the terms of employment for any employee. The policy contains an identical provision regarding alcohol use. The policy further provides that, "for purposes of this policy, 'under the influence' means having any measurable amount of a prohibited substance under this policy in any test of the employee's breath, blood, urine, hair, or any other test permitted by law." The provisions of the policy are incorporated into the collective bargaining agreement.

¶ 3    On December 19, 2008, the plaintiff was required to submit to a random drug test pursuant to this policy. After taking the test, he informed his supervisor, Janice

2

DePlanty, that he had smoked marijuana twice while he was on vacation a few weeks earlier. He admitted to smoking small amounts of marijuana on November 15 and November 22, 2008, and he returned to work on November 24. The plaintiff told DePlanty that he did not believe he would pass the test as a result.

¶ 4 Two days later, he made the same admission to the Housing Authority's executive director, Tom Upchurch. On December 22, at Upchurch's request, the plaintiff and his union representative met with Upchurch and DePlanty. The union representative informed Upchurch and DePlanty that the plaintiff knew about the provisions of the drug- and alcohol-free workplace policy. The plaintiff was discharged for violating the policy. Subsequently, the results of the drug test came back. The test was negative.

¶ 5 The plaintiff filed a claim for unemployment insurance pursuant to the Unemployment Insurance Act (820 ILCS 405/100 *et seq.* (West 2008)). One of the questions on the application asked if the claimant's employer had a rule or policy relating to the last act that led to the claimant's discharge and, if so, what that rule or policy was. The plaintiff responded in the affirmative and described the policy as "not using drugs while employed" by the Housing Authority. A Department of Employment Security claims adjudicator found that the plaintiff knew that smoking marijuana violated his union contract and, as such, "his choice to use the drug represents willful misconduct." The claims adjudicator therefore found that the plaintiff was ineligible for unemployment insurance benefits.

¶ 6 The plaintiff requested an administrative appeal of this decision. A Department of Employment Security referee affirmed the claims adjudicator's decision. The matter then

3

proceeded to the Board of Review of the Department of Employment Security (Board of Review or Board). The decision of the Board of Review focused on the parties' conflicting interpretations of the phrase "while in the course of employment" in the Housing Authority's policy. The plaintiff maintained that the phrase did not include time that he was on vacation while employed by the Housing Authority. The Housing Authority argued that because it was required to provide a drug-free policy for its employees and tenants in order to receive federal funding, the phrase must be interpreted to include even time away from work while employed by the Housing Authority. The Board of Review accepted this argument and concluded that "while in the course of employment" referred to the plaintiff's entire "tenure while working for the employer, not just while performing services." The Board of Review issued its final administrative decision upholding the denial of benefits on September 30, 2009.

¶ 7 The plaintiff next filed a petition for administrative review in the circuit court of Jefferson County. The circuit court reversed the decision of the Board of Review. The court found that both the referee and the Board of Review "misapplied the definition of 'in the course of employment.' " The court explained that while the agency interpreted the phrase to mean "any time the Plaintiff is employed" by the Housing Authority, under "well settled" Illinois law, the phrase encompasses only acts that occur "at a place where the worker may reasonably be in the performance of his duties *and* while he is fulfilling those duties or engaged in something incidental thereto." (Emphasis in original.)

¶ 8 The court further found that the policy was unreasonable because (1) it failed to take into account the fact that some drug tests will yield positive results for a long period

of time even when the person is not under the influence; (2) the policy failed to take into consideration the fact that some states have legalized the use of marijuana; and (3) accepting the Housing Authority's definition of "in the course of employment," the policy restricts the use of alcohol or cannabis for off-duty employees, which "serves no legitimate public purpose." The court noted that the Housing Authority admitted that despite the identical wording of the provisions prohibiting drug and alcohol use, it did not interpret or enforce the provisions the same way. The court concluded that the plaintiff did not violate the policy and was therefore eligible for unemployment benefits. This appeal followed.

¶ 9    In an appeal from a ruling on a petition for administrative review, we review the final decision of the administrative agency, not the decision of the circuit court. *Czajka v. Department of Employment Security*, 387 Ill. App. 3d 168, 172 (2008). The factual findings of the agency are *prima facie* true and correct, and we will disturb these findings only if they are against the manifest weight of the evidence. *Czajka*, 387 Ill. App. 3d at 173 (citing *Jackson v. Board of Review of the Department of Labor*, 105 Ill. 2d 501, 513 (1985)). However, we review *de novo* the agency's conclusions of law. If an appeal presents mixed questions of fact and law, we will reverse the agency's determination if it is clearly erroneous. *Czajka*, 387 Ill. App. 3d at 173. A decision is clearly erroneous if a thorough review of the record leaves this court " 'with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

5

¶ 10    At issue in this appeal is whether the Board of Review properly concluded that the plaintiff's conduct amounted to "misconduct" within the meaning of the Unemployment Insurance Act.  An employee who is discharged for misconduct is ineligible to receive unemployment benefits.  820 ILCS 405/602(A) (West 2008).  The relevant statute defines misconduct as "the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning."  820 ILCS 405/602(A) (West 2008).

¶ 11    The instant case does not involve conduct that was repeated in spite of previous warnings.  Thus, there are three elements that must be present to establish misconduct within the meaning of the Unemployment Insurance Act: (1) there was a "deliberate and willful" violation of the employer's rule or policy; (2) the rule or policy was reasonable; and (3) the employer was harmed as a result.  *Czajka*, 387 Ill. App. 3d at 173-74.  Although potential harm is sufficient to satisfy the third element (*Hurst v. Department of Employment Security*, 393 Ill. App. 3d 323, 329 (2009)), the possibility of harm must not be remote or speculative (*Czajka*, 387 Ill. App. 3d at 180).

¶ 12    Although the claimant bears the burden of proving the right to receive unemployment insurance benefits, the Unemployment Insurance Act must be liberally construed in favor of giving benefits.  *Czajka*, 387 Ill. App. 3d at 174.  In addition, in order "to disqualify an employee from receiving unemployment compensation, an employer must satisfy a higher burden than merely proving that an employee should have been discharged."  *Czajka*, 387 Ill. App. 3d at 176.

6

¶ 13 Generally, whether these three elements are met is a mixed question of fact and law. *Hurst*, 393 Ill. App. 3d at 327. However, this appeal requires us to interpret the Housing Authority's policy. Interpretation of contractual language is a question of law, which we review *de novo*. *Carr v. Gateway, Inc*., 241 Ill. 2d 15, 20 (2011). Thus, we will apply a *de novo* standard of review to the Board's interpretation of the key phrase−"in the course of employment"−but we will determine whether its ultimate finding was clearly erroneous.

¶ 14 We first consider whether the plaintiff deliberately and willfully violated a rule or policy of his employer. Deliberate and willful misconduct consists of conscious acts made in violation of the employer's rules when the employee knows his actions are against the rules. *Czajka*, 387 Ill. App. 3d at 176. Here, it is undisputed that the plaintiff was aware of the Housing Authority's drug and alcohol policy. What is less clear is whether his conduct actually violated that policy. As previously discussed, the policy included a provision that employees may not be under the influence of illegal drugs on Housing Authority property or "while in the course of" their employment. The final administrative decision of the Board of Review turned on its interpretation of this last term. The Board read the phrase to mean any time the plaintiff was an employee of the Housing Authority. Both defendants argue that this interpretation was correct and the circuit court erred in reaching the opposite conclusion. We disagree.

¶ 15 The Housing Authority's policy does not define the phrase "in the course of employment," and the Board of Review did not provide any rationale for its interpretation. Courts of this state have defined that phrase in the context of workers'

7

compensation claims, holding that injuries occur "in the course of employment" if they take place (1) "at a place where the employee is reasonably expected to fulfill her duties," and (2) "while she is performing those duties." *Pechan v. DynaPro, Inc.*, 251 Ill. App. 3d 1072, 1087 (1993) (citing *Kropp Forge Co. v. Industrial Comm'n*, 225 Ill. App. 3d 244, 250 (1992)). The Board's interpretation is at odds with this definition.

¶ 16    In addition, we note that the Housing Authority's policy also prohibits possession, use, distribution, or being under the influence of drugs and alcohol while on Housing Authority property. This provision is superfluous if "in the course of employment" is construed to mean any time the employee is employed by the Housing Authority. Moreover, as we will explain, if we were to interpret the policy in the manner suggested by the defendants, we would have to conclude that the policy is not a reasonable rule of the employer. We find that the Board's interpretation of the phrase "in the course of employment" was in error.

¶ 17    The Housing Authority argues, however, that even accepting this less expansive definition, the plaintiff nevertheless violated the policy by being "under the influence" of cannabis at work. This argument has two components. First, the Housing Authority points to the language in the policy defining "under the influence" as having "any measurable amount" of a prohibited substance "in any test." Despite the fact that he did not test positive for drugs, the Housing Authority argues that the plaintiff violated this policy by coming to work when *he believed* that he was "under the influence" pursuant to this definition. Second, it argues that the plaintiff "would certainly have been 'under the influence' of cannabis as that term is defined [in the policy] when he returned to work on

8

November 24, 2008." We are not persuaded. The policy expressly provides that an employee is "under the influence" if there is a measurable amount of any prohibited substance *in any drug test*. The plaintiff may have believed there would be a measurable amount of cannabis in his system when he was tested; however, this was not the case.

¶ 18    We next address whether the policy was reasonable. A reasonable rule or policy is one which is connected to the employee's performance of his job. *Czajka*, 387 Ill. App. 3d at 177 (quoting 820 ILCS 405/602(A) (West 2004) and *Jackson v. Board of Review of the Department of Labor*, 105 Ill. 2d 501, 512 (1985)). The Unemployment Insurance Act expressly provides that violation of an employer's rule will only disqualify a discharged employee from receiving unemployment benefits if the rule is one "governing the individual's behavior *in performance of his work*." (Emphasis added.) 820 ILCS 405/602(A) (West 2008). However, courts have found that a reasonable rule or policy can govern behavior outside work as long as there is a sufficient nexus between that behavior and the workplace to make the rule or policy work-related. See, *e.g.*, *Czajka*, 387 Ill. App. 3d at 176-77 (rule prohibiting active opposition to a program of the employer); *Manning v. Department of Employment Security*, 365 Ill. App. 3d 553, 558 (2006) (hostile and intimidating voicemail messages to a coworker could adversely affect the work environment).

¶ 19    Here, we have concluded that the policy at issue prohibits employees from using or possessing drugs or alcohol or being under the influence on the job or on Housing Authority property. We think it is obvious that such requirements are related to the performance of employees' job duties and, as such, are reasonable. The defendants,

9

however, have argued that the policy should be interpreted to prohibit any use of illicit substances at any time during an employee's tenure and to allow the discharge of an employee who admits to using marijuana even if the employee does not fail a drug test. They further argue that such a policy would be reasonable. For the following reasons, we disagree.

¶ 20    In support of this contention, the defendants call our attention to *McAllister v. Board of Review of the Department of Employment Security*, 263 Ill. App. 3d 207 (1994). They argue that the *McAllister* court rejected the precise arguments the plaintiff makes in this appeal. In response, the plaintiff argues that *McAllister* is distinguishable from the case before us. We agree with the plaintiff.

¶ 21    The plaintiff in McAllister was employed as a bus driver for the Chicago Transit Authority (CTA). *McAllister*, 263 Ill. App. 3d at 208. He was required to submit to a drug test after a bus accident. The test revealed the presence of cocaine in the plaintiff's system. As a result, he was suspended from his job. *McAllister*, 263 Ill. App. 3d at 208. The CTA had a policy providing that an employee " 'may not have a controlled substance or narcotics of any kind in his or her system' " while on the job. *McAllister*, 263 Ill. App. 3d at 209. Despite this broad language, the record revealed that the plaintiff was required to submit to a drug test only because of his involvement in the accident. *McAllister*, 263 Ill. App. 3d at 209.

¶ 22    The plaintiff there argued, as the plaintiff does here, that the CTA's drug policy was not reasonable because it governed his conduct outside of work, and that conduct did not impact the performance of his duties. *McAllister*, 263 Ill. App. 3d at 210. (We note

10

that the accident occurred when the plaintiff parked his unoccupied bus at a bus depot and went to use the restroom without applying the hand brake. *McAllister*, 263 Ill. App. 3d at 208. The *McAllister* opinion appears to assume that the plaintiff's use of cocaine six days earlier did not cause him to be impaired or play any role in this accident.)

¶ 23 In rejecting the plaintiff's argument, the appellate court emphasized the fact that the plaintiff there worked in a safety-sensitive position. *McAllister*, 263 Ill. App. 3d at 211 (quoting *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 633 (1989)). The court pointed to cases holding that it is reasonable for employers to require employees in safety-sensitive positions to pass drug tests even without any signs of impairment or other individualized suspicion. The court explained that this is so because a person in a safety-sensitive position could potentially jeopardize public safety without showing any obvious outward signs of impairment. *McAllister*, 263 Ill. App. 3d at 211-12 (quoting *Skinner*, 489 U.S. at 633, and *Farm Fresh Dairy, Inc. v. Blackburn*, 841 P.2d 1150, 1153 (Okla. 1992)).

¶ 24 The *McAllister* court also noted that the test at issue was administered pursuant to a policy that allowed the CTA "to test any bus operator for drugs after an accident." *McAllister*, 263 Ill. App. 3d at 212. The court further noted that the test showed that the level of cocaine in the driver's system "exceeded the standard threshold amount specified in the Federal regulations adopted by the CTA." *McAllister*, 263 Ill. App. 3d at 212. The court concluded that both the rule allowing drug testing after an accident and the rule prohibiting any amount of a narcotic in a driver's system were "reasonable efforts by the

11

CTA to promote public safety and the protection of the lives of its passengers." *McAllister*, 263 Ill. App. 3d at 212.

¶ 25 Here, by contrast, the plaintiff is not in a safety-sensitive position. Thus, the nexus between his off-duty use of marijuana and the performance of his job duties is not as strong as the nexus between the off-duty use of cocaine by a bus driver and the safety of his passengers. Moreover, critically, the drug test administered to the plaintiff here was negative. In spite of this, the defendants ask us to interpret the Housing Authority's policy in a manner that would make the policy much more far-reaching than the policies the *McAllister* court found reasonable. Nothing in *McAllister* supports the notion that a policy is reasonable within the meaning of the Unemployment Insurance Act if it permits an employer to discharge an employee for off-duty conduct without a positive drug test result.

¶ 26 The defendants argue, however, that their expansive interpretation of the policy is reasonable because the Housing Authority is required to maintain a drug-free workplace policy in order to remain eligible for federal funding. We acknowledge that this was a factor cited by the *McAllister* court in finding the CTA policies at issue there reasonable. See *McAllister*, 263 Ill. App. 3d at 211 (citing 41 U.S.C. §§ 701, 702 (1988) (now see 41 U.S.C. §§ 8102, 8103 (2012))). However, the federal statute mandating a drug-free workplace policy does not require grant recipients to discharge an employee for off-duty marijuana use. The relevant statute provides that an entity receiving a federal grant must publish and enforce "a statement notifying employees that the unlawful manufacture, distribution, dispensation, possession, or use of a controlled substance is prohibited *in the*

*grantee's workplace*." (Emphasis added.) 41 U.S.C. § 8103(a)(1)(A) (2012). In short, nothing in either *McAllister* or the federal law cited by the defendants requires us to alter the conclusion we reach.

¶ 27    As noted earlier, the third element that must be present to deny benefits is harm to the employer. In light of our conclusion that the plaintiff did not violate the Housing Authority's policy as written, we need not address this issue.

¶ 28    Finally, we emphasize that the question is not whether the Housing Authority was justified in discharging the plaintiff for his admitted marijuana use absent a positive result on a drug test. The question is only whether this conduct amounts to "misconduct" that will disqualify him from receiving unemployment insurance benefits. An employee's conduct may be sufficient to justify his discharge without constituting misconduct sufficient to disqualify him from benefits under the Unemployment Insurance Act. *Adams v. Ward*, 206 Ill. App. 3d 719, 726 (1990).

¶ 29    For the foregoing reasons, we affirm the decision of the circuit court reversing the final administrative decision.


¶ 30    Affirmed.

2014 IL App (5th) 130209

NO. 5-13-0209

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

WILLIAM F. EASTHAM III,                         )    Appeal from the
                                                )    Circuit Court of
        Plaintiff-Appellee,                     )    Jefferson County.
                                                )
v.                                              )
                                                )    No. 09-MR-57
THE HOUSING AUTHORITY OF JEFFERSON              )
COUNTY and THE BOARD OF REVIEW OF THE           )
DEPARTMENT OF EMPLOYMENT SECURITY,              )    Honorable
                                                )    Mark R. Stanley,
        Defendants-Appellants.                  )    Judge, presiding.
_____

**Opinion Filed:**          December 2, 2014
_____

**Justices:**    Honorable Melissa A. Chapman, J.

                 Honorable Judy L. Cates, P.J., and
                 Honorable Richard P. Goldenhersh, J.,
                 Concur
_____

**Attorneys**    Henry P. Villani, Villani Johnson Buesking, LLC, 2215 Broadway, Mt. Vernon,
**for**          IL 62864 (for Housing Authority of Jefferson County); Lisa Madigan, Attorney
**Appellants**   General, Michael A. Scodro, Solicitor General, Evan Siegel, Timothy K. McPike,
                 Assistant Attorney Generals, Office of the Attorney General, 100 West Randolph
                 Street, 12th Floor, Chicago, IL 60601 (for Board of Review of the Department of
                 Employment Security)
_____

**Attorneys**    L. James Hanson, Daniel M. Bronke, L. James Hanson, Attorney at Law, 1112
**for**          Broadway, Mt. Vernon, IL 62864
**Appellee**
_____