# Illinois Official Reports

## Appellate Court

*Universal Security Corp. v. Department of Employment Security*,
2015 IL App (1st) 133886

| | |
|---|---|
| Appellate Court Caption | UNIVERSAL SECURITY CORPORATION, Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY, DIRECTOR OF EMPLOYMENT SECURITY, and THE BOARD OF REVIEW OF THE DEPARTMENT OF EMPLOYMENT SECURITY, Defendants-Appellees (Darvin T. Hooker, Defendant). |
| District & No. | First District, Third Division<br>Docket No. 1-13-3886 |
| Filed | February 18, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A decision of the Board of Review of the Department of Employment Security holding that the fact that defendant fell asleep while on duty did not constitute deliberate and willful misconduct within the meaning of the Illinois Unemployment Insurance Act and he could claim benefits was upheld by the appellate court, since there was no indication defendant had previously fallen asleep on duty, that he realized at the time that he was falling asleep or that he made no efforts to stay awake, he was asleep only a short time in an upright sitting position in public view, he did not have a history of work infractions, try to minimize the situation or go back to sleep, and the ruling that he was eligible for benefits was not clearly erroneous. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-50458; the Hon. Robert Lopez Cepero, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Barry R. Bartlett, of Bartlett Associates, LLC, of Chicago, for appellant.

Lisa Madigan, Attorney General, of Chicago (Nadine Wichern, Assistant Attorney General, of counsel), for appellees.

Panel

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice Mason concurred in the judgment and opinion.
Presiding Justice Pucinski dissented, with opinion.

## OPINION

¶ 1    Defendant Darvin T. Hooker took on a second job as an unarmed night security guard at O'Hare International Airport. Less than three months later, a supervisor caught Hooker, while on duty, sitting at his station in an upright position, eyes closed, head tilted to one side, and inert, in other words, asleep, an offense mandating discharge. Hooker then sought unemployment insurance benefits. An Illinois Department of Employment Security claims adjudicator denied him benefits under the Illinois Unemployment Insurance Act (Act) (820 ILCS 405/602(A) (West 2012)), holding that Hooker had deliberately and willfully violated Universal's reasonable policy prohibiting sleeping on the job. Hooker appealed, and the referee reversed, ruling that Hooker had not fallen asleep deliberately and willfully and, accordingly, could claim benefits. His employer, Universal Security Corporation, plaintiff, appealed the referee's decision to the Board of Review of the Department of Employment Security, which affirmed. Next, Universal sought judicial review, and the circuit court affirmed.

¶ 2    On appeal, Universal contends that the granting of unemployment benefits was clearly erroneous. We affirm and agree that the record supports the Board of Review's conclusion that Hooker's nodding off did not amount to deliberate and willful misconduct within the meaning of section 602(A) of the Act.

¶ 3                              BACKGROUND

¶ 4    The facts, undisputed by the parties and established in a telephonic hearing before the referee, show: Universal hired Hooker to work full-time as an unarmed security officer at O'Hare International Airport during the overnight shift. About 2½ months later, on September 25, 2012, at about 1:20 a.m., a supervisor saw Hooker sitting at his post with his head down and eyes closed. She took his picture on her cell phone before he awoke, about three or four minutes later. Hooker admitted that he "temporarily dozed off on duty," he was tired from working two jobs, and he knew of the potential negative ramifications to his employer and to him. That evening he had reported to work a few hours after a 10-hour shift at his other job. Universal's policy provides for automatic discharge should an employee be caught sleeping on duty.

¶ 5    The issue for the referee was whether Hooker had engaged in a deliberate and willful violation, as defined under section 602(A) of the Act. 820 ILCS 405/602(A) (West 2012).

The referee decided Hooker had not deliberately and willfully dozed and therefore had not committed "misconduct" under the Act and, thus, could claim his unemployment insurance benefits.

¶ 6 Universal appealed to the Board of Review of the Department of Employment Security (the Board). The Board affirmed the referee's ruling as supported by the record and the law. The Board explained that "falling asleep on the job is willful only if an individual purposely takes a nap." The Board noted that Hooker admitted he was "very tired" when he dozed off and that he fell asleep "in the open where all could observe him," an indication of lack of intent.

¶ 7 Universal sought judicial review (see 735 ILCS 5/3-101 *et seq.* (West 2012)). The circuit court affirmed the Board's decision on the ground that it was not clearly erroneous. This appeal followed. (In addition to Hooker, named defendants are the Illinois Department of Employment Security, the Director of the Illinois Department of Employment Security, and the Board of Review.)

¶ 8                                                    ANALYSIS

¶ 9 The Act affords econo2mic relief to employees who, through no fault of their own, become "involuntarily unemployed." *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 396 (2001). A former employee may not receive benefits under the Act if his or her discharge was for misconduct connected to work (see 820 ILCS 405/602(A) (West 2012)) when: (i) the employer has a reasonable work policy or rule that (ii) the employee deliberately and willfully violates, and (iii) the violation either harms the employer or was repeated by the employee despite a warning. *Woods v. Illinois Department of Employment Security*, 2012 IL App (1st) 101639, ¶ 19; *Phistry v. Department of Employment Security*, 405 Ill. App. 3d 604, 607 (2010). Courts construe the Act in an expansive fashion to avoid the forfeiture of benefits. *Czajka v. Department of Employment Security*, 387 Ill. App. 3d 168, 174 (2008) ("While unemployment insurance benefits are a conditional right and the burden of establishing eligibility rests with the claimant, the Act must be liberally interpreted to favor the awarding of benefits."). An employee deliberately and willfully violates a work rule or policy when he or she is aware of and consciously disregards the rule. *Odie v. Department of Employment Security*, 377 Ill. App. 3d 710, 713 (2007).

¶ 10 According to Universal, Hooker's reporting to work in an extremely tired condition was worse than being on medication that could have made him drowsy and that Hooker's slight work history (10 weeks) was not relevant because he violated a reasonable workplace policy and thereby harmed Universal. Defendants counter that while Hooker slept on duty, he did not violate the policy deliberately and willfully because he (i) inadvertently fell asleep, (ii) dozed for a few minutes in an open area exposed to public view, (iii) had no history of sleeping on duty, (iv) did not take medication that could make him drowsy, and (v) did not realize he was falling asleep, all of which demonstrate lack of intent.

¶ 11                                              Standard of Review

¶ 12 This court reviews the Board's decision, not that of the circuit court, the referee, or claims adjudicator. *Pesoli v. Department of Employment Security*, 2012 IL App (1st) 111835, ¶ 20. Our review is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.*

(West 2012); 820 ILCS 405/1100, 2205 (West 2012)) and extends to all questions of fact and law presented by the record before us. 735 ILCS 5/3-110 (West 2012). The degree of deference we afford to the agency's decision–the applicable standard of review–depends on whether the question involves one of fact, one of law, or a mixed question of fact and law. *Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 234 Ill. 2d 446, 463 (2009); *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001).

¶ 13    The parties submit that the "clearly erroneous" standard applies, and we agree. When the question concerns the proper discharge for misconduct of an individual in his or her work, we are presented with a mixed question of fact and law, and we review the Board's decision to determine if it was clearly erroneous. *AFM Messenger Service, Inc.*, 198 Ill. 2d at 395. For a finding to be clearly erroneous, the entire record must create for the reviewing court a definite and firm conviction that a mistake has been made. *Id.*; *Hurst v. Department of Employment Security*, 393 Ill. App. 3d 323, 327 (2009) (same). The "clearly erroneous" standard "is largely deferential to the agency decision" (*Chicago Messenger Service v. Jordan*, 356 Ill. App. 3d 101, 106-07 (2005)), but gives "somewhat less deference to the agency than [it] would if the decision related solely to a question of fact, because the decision is based on fact-finding that is inseparable from the application of law to fact" (*Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 369 (2002)).

¶ 14    Considering the Board's factual findings as *prima facie* true and correct, for the reasons that follow, we find that the Board's determination that the plaintiff was eligible for unemployment benefits was not clearly erroneous.

¶ 15                              No Deliberate and Willful Misconduct

¶ 16    An employee's conduct may be careless or negligent or substandard, but that is not enough to constitute "deliberate and willful" conduct under the Illinois Unemployment Insurance Act. To be considered "deliberate and willful," the Act requires the conduct be intentional. As we observed in *Messer & Stilp, Ltd. v. Department of Employment Security*, 392 Ill. App. 3d 849, 860 (2009), the present definition of "misconduct," added to section 602(A) (Pub. Act 85-956 (eff. Jan. 1, 1988)), "expressly rejected the argument that carelessness or negligence alone should be equated with willful and deliberate misconduct." See *Siler v. Department of Employment Security*, 192 Ill. App. 3d 971, 975 (1989) (amendment "intended that persons discharged for incapacity, inadvertence, negligence or inability to perform assigned tasks should receive unemployment benefits").

¶ 17    The parties' arguments primarily examine two cases involving sleeping on the job. These cases–*Washington v. Board of Review*, 211 Ill. App. 3d 663 (1991), in which the employee received unemployment benefits, and *Odie v. Department of Employment Security*, 377 Ill. App. 3d 710 (2007), in which the employee was denied unemployment benefits–reveal differences in material facts that led to different results and provide us with a useful background for our analysis.

¶ 18    In *Washington*, the plaintiff, an administrative secretary at a hospital, left a hospital's medical executive committee meeting to take an aspirin for a headache, returned to the meeting room, and sat down at the front table, resting her bent elbow on the table and leaning her head against her hand. Soon she dozed off and awoke about 30 minutes later after the meeting had ended. The plaintiff had never had a poor work performance review or been

- 4 -

known to fall asleep at work. This evidence revealed that she had not fallen asleep on purpose, and, thus, her behavior did not amount to deliberate and willful misconduct that would disqualify her from eligibility for unemployment benefits. *Washington*, 211 Ill. App. 3d at 667-68; see *Wrobel v. Department of Employment Security*, 344 Ill. App. 3d 533 (2003) (forgetting to set alarm clock and oversleeping was careless though not intentional or purposeful act).

¶ 19     A different result occurred in *Odie v. Department of Employment Security*, where a longtime certified nursing assistant fell asleep on her job at a nursing home for 10 to 20 minutes. She had voluntarily taken an extra-strength Tylenol for a toothache, knowing full well that the Tylenol would cause drowsiness. After she fell asleep, she failed to hear a resident's shouts for help, and a visitor shook her awake. Instead of immediately handling the situation, she said to the visitor, " 'yeah she do that all the time,' " and went back to sleep. *Odie*, 377 Ill. App. 3d at 711. Moreover, she had not informed her employer that she was taking the medication and failed to offer competent evidence at the hearing to explain her actions. The plaintiff also had been given on-the-job warnings by her employer, and she was aware that her job was in jeopardy. Under these circumstances the court concluding plaintiff "purposely took a nap." *Odie*, 377 Ill. App. 3d at 714. Accordingly, the court found deliberate and willful misconduct connected with her work. *Id.* at 714-15.

¶ 20     Hooker's situation more closely resembles that of Washington. Nothing in the record indicates that Hooker previously had fallen asleep on duty, that he realized at the time that he was falling asleep, or that he made no efforts to stay awake. And, he was asleep only for a short interval (about one-tenth of the time of the plaintiff in *Washington* and less than half of the time of the plaintiff in *Odie*) in an upright sitting position out in public view. Nor did Hooker, as in *Odie*, report a history of work infractions or, when awakened, try to minimize the situation or go back to sleep. As the Board concluded, these circumstances do not indicate Hooker intended to fall asleep at work, and the Board's ruling that Hooker was eligible for unemployment benefits was not clearly erroneous, even though Universal had every reason to fire him for sleeping on the job.

¶ 21     Affirmed.

¶ 22     PRESIDING JUSTICE PUCINSKI, dissenting.

¶ 23     It is undisputed that Hooker fell asleep for three to four minutes while on duty.

¶ 24     It is undisputed that his employer, Universal, had a policy against sleeping on duty.

¶ 25     It is undisputed that Hooker knew the policy and knew that violating it would result in automatic termination from employment.

¶ 26     It is undisputed that the policy was reasonable.

¶ 27     It is undisputed that the employer was harmed by Hooker's actions, *i.e.*, that sleeping in uniform in view of the public made the employer look unprofessional, and not up to the task of securing O'Hare Airport, putting its reputation and, indeed, its contract, at risk.

¶ 28     It is undisputed that Hooker worked a full 10-hour shift at his other job and was tired when he reported for work at Universal's O'Hare site.

¶ 29     The only thing that is disputed is whether Hooker willfully and deliberately fell asleep.

¶ 30    Universal says it was willful and deliberate because he reported to work knowing he was tired and therefore set himself up to fall asleep at his post.

¶ 31    The State says it was not willful and deliberate because Hooker only dozed off for a few minutes and did it in public view.

¶ 32    The State says that "falling asleep on the job is only willful if an individual purposely takes a nap."

¶ 33    I do not believe that statement satisfies the requirement that the totality of circumstances must be explored to decide if something is willful and deliberate.

¶ 34    Both sides have discussed *Wrobel*, *Washington*, and *Odie*. But I think there are significant differences here that have been overlooked.

¶ 35    In *Wrobel*, the employee overslept and got to work late. In the meantime, his employer knew he was not there and was not relying on him.

¶ 36    In *Washington*, the employee was assigned to a secretarial duty and fell asleep during a meeting after taking an aspirin. Clearly, a meeting in this situation was not high risk. Nor was the employee's reaction to the aspirin for her headache predictable: millions of people take aspirin and do not fall asleep.

¶ 37    Only *Odie* has a situation that is even close to this case, that is, a high-risk employment environment where the employer has placed trust in the on-site employee to be awake and alert. In *Odie*, a certified nursing assistant who had been employed by a nursing home for over 17 years fell asleep for 10 to 20 minutes on the job after she voluntarily took an extra-strength Tylenol, which she believed caused her drowsiness, for a toothache without notifying her employer that she was doing so. While the plaintiff was asleep, a resident shouted for help. The plaintiff was supposed to monitor 25 residents of the nursing home, which required her to be awake and alert. She knew that falling asleep on the job violated company policy and was a basis for termination. This court ruled that plaintiff had willfully and deliberately committed misconduct by voluntarily taking the medication she believed would cause drowsiness without notifying her employer and then falling asleep while on duty. *Odie*, 377 Ill. App. 3d at 714-15.

¶ 38    Here, we have an employee in a high-risk situation: while the White House, the Pentagon, and Capitol Hill are arguably more high-risk than O'Hare Airport, it is very hard to argue that security at O'Hare and other airports around the nation and world are low enough risks that someone sleeping at the door to a jet-way leading to the airfield is not a security issue.

¶ 39    Universal knew that Hooker showed up for work. Universal did not know that he was tired. Universal assigned him to be awake and alert at his post: the door he was guarding. While he was asleep, his lack of attention could have given someone an opportunity to gain access to secure areas for any number of dangerous reasons.

¶ 40    That is why the airport hires security guards for those doors.

¶ 41    That is why Hooker falling asleep is not only a good reason to terminate his employment, but also a good reason to deny him unemployment benefits.

¶ 42    To make light of this and hold that his falling asleep was not willful and deliberate ignores the reality of his choices. I am sympathetic to today's economy. But I am also aware that security at airports is serious business. Hooker made a choice. He chose to go to work tired. He chose to work in not one, but two, security agencies. He chose to work for

Universal, which manages security for O'Hare and Midway Airports in one of the nation's busiest cities. He chose not to "call out" for time off. He made the decision to report for work under circumstances not conducive to remaining awake and alert for the duration of his shift. He knew he was tired and that increased the likelihood that he would fall asleep.

¶ 43    I find the reasoning in *Ramirez v. Illinois Department of Employment Security*, 2014 IL App (1st) 131187-U, very persuasive. My colleague, Justice Epstein, wrote:

> "We reject plaintiff's claim that his tardiness was not willful and deliberate because his act of oversleeping was not intentional. Following this rationale, tardiness would rarely, if ever, constitute misconduct. Tardiness is often unintentional and caused by other circumstances such as traffic and inclement weather. However, an employer's expectation that its employees arrive to work on time, regardless of other circumstances, is reasonable. As the regulations [(56 Ill. Adm. Code 2840.25(b) (2010))] state, tardiness always causes harm to the employer because it disrupts the general operations of the business. An employer needs its employees to arrive to work promptly in order to conduct its business. Accordingly, an employee is expected to comply with an employer's absence and tardiness policy, and his failure to do so constitutes misconduct." *Id.* ¶ 22.

Ramirez was denied unemployment benefits when he was fired for violating the employer's attendance policy. The Board of Review upheld the denial of unemployment benefits, the trial court affirmed and this court also affirmed.

¶ 44    The decision by the majority in this case essentially tells employees like Hooker: "go ahead, fall asleep, then work your second job, but now you can go home and get some sleep on the other employer's dime" because under Illinois law, employers pay for unemployment insurance; it is not manna from heaven. And, to make matters worse for the employer, its rates go up! ("For experience-rated employers (those with three or more years of experience), the contribution rate is based on a ratio, called the benefit ratio, which is determined in such a way that the greater the unemployment caused by the employer, the higher the rate." Illinois Department of Employment Security, FAQs by Employers, http://www.ides. illinois.gov/Pages/FAQs-by-Employer.aspx (last visited Feb. 9, 2015).)

¶ 45    The principle is the same: the employer has a reasonable expectation that an employee will turn up for work ready to do the job he is assigned. If the job is securing a jet-way door, and the employer and employee have agreed that sleeping on the job is cause for automatic termination, then it is fair for the employer to believe the employee has turned up for work ready and able to stay awake and alert to provide that security. This employee's failure to conform to company policy because of his life outside of this job is not some accident or unpredictable event. It is not a tornado whooshing down on the employee, or an overturned semi on the expressway to work. It is entirely predictable that someone working two full-time jobs with very little time in between and even less time to sleep will fall sleep somewhere, at some time, on duty. Hooker knew that and ignored the risk to his employer, the employees of the airport, and the general public.

¶ 46    Given the circumstances, I cannot agree that his behavior was not willful and deliberate. I believe the reasoning of the Board of Review was clearly erroneous in this case and I would reverse to deny Hooker unemployment benefits.