2023 IL App (1st) 220553-U
No. 1-22-0553
Order filed October 27, 2023

Sixth Division

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| ALBERTO COVARRUBIAS, ) | |
| ) | |
| Plaintiff-Appellee, ) | Appeal from the Circuit Court |
| ) | of Cook County. |
| v. ) | |
| ) | |
| BOARD OF REVIEW OF THE ILLINOIS ) | No. 20 CH 03625 |
| DEPARTMENT OF EMPLOYMENT ) | |
| SECURITY, ) | |
| ) | |
| Defendant-Appellant, ) | The Honorable |
| ) | Daniel P. Duffy, |
| ) | Judge, presiding. |
| CITY OF CHICAGO DEPARTMENT OF ) | |
| PERSONNEL c/o SEDWICK CLAIMS. ) | |
| ) | |
| Defendant. | |

JUSTICE HYMAN delivered the judgment of the court.
Justice Pucinski concurred in the judgment.
Justice Lavin dissented.

ORDER

¶ 1    *Held*:  Affirming Board's decision denying unemployment benefits to police officer who violated police department rules and engaged in misconduct.

¶ 2    The Chicago Police Department suspended Officer Alberto Covarrubias for violating department rules by becoming intoxicated at a family party, getting into an altercation with a

woman, and refusing to comply with the orders of responding police officers. The Board of Review for the Illinois Department of Employment Security denied Covarrubias's application for unemployment benefits due to his suspension for misconduct under section 602(A) of the Unemployment Insurance Act (820 ILCS 405/602(A) (West 2018)). Covarrubias filed a complaint for administrative review in the circuit court, which reversed the Board's decision and remanded. Again, the Board found Covarrubias ineligible, after which the circuit court reversed the Board's decision, finding no evidence that Covarrubias willfully violated the rule. We affirm the Board's decision. The evidence in the record, primarily Covarrubias's testimony, supports the Board's finding he had engaged in misconduct under the Act by willfully violating a reasonable rule and harming the police department.

¶ 3                                    Background

¶ 4        Covarrubias was a full-time Chicago police officer from July 2013 until August 2018. On August 16, 2018, the Chicago police department filed administrative charges against Covarrubias for an incident around 5:30 a.m. on March 26, 2016. Covarrubias admitted he was intoxicated after leaving a party at his sister's house and arguing with a woman on the street. The police were called and took Covarrubias to the station. The allegations against Covarrubias included (i) taking the responding officer's watch lineup sheet, (ii) threatening an on-duty officer with physical violence, (iii) obstructing the investigation into the incident by refusing to answer officers' questions, (iv) refusing to submit to a breathalyzer test, (v) disobeying direct orders, (vi) being insubordinate toward a superior officer, and (vii) being intoxicated while off duty. Covarrubias was suspended without pay pending termination. (The Police Board of the City of Chicago eventually found Covarrubias guilty of all administrative charges but suspended rather than discharged him).

¶ 5        Covarrubias applied for unemployment benefits with the Illinois Department of Employment Security. After the City protested Covarrubias's application, the Department awarded Covarrubias unemployment benefits. The Department found that although the City had discharged him for violating police department policy, the incident occurred in the "distant past," and since then, Covarrubias had not engaged in similar conduct.

¶ 6        The City appealed the decision. At a hearing before an administrative law judge, Sergeant Luke Connolly from the police department's internal affairs bureau testified about the March 2018 incident. Covarrubias also testified and acknowledged drinking but could not remember what happened because he "blacked out." He said he knew the department's rule prohibiting intoxication on and off duty but claimed the rule was not enforced. He also said he was aware he could lose his job for refusing to take a breathalyzer or drug test. After the hearing, the ALJ determined that Covarrubias was ineligible for unemployment benefits. Covarrubias appealed to the Board, arguing he had insufficient time to obtain counsel before the hearing. The Board agreed and remanded for a new hearing.

¶ 7        At the second hearing, Connolly again testified for the City. Covarrubias testified that on the night of the incident, he attended a family party at his sister's house and did not recall interacting with the police because he was "intoxicated" and "in a state of blackout." He said he had been on furlough for about 20 days and had no reason to be involved in police activity that night. He also said he did not intentionally become intoxicated but agreed his conduct "got out of hand." He repeated that he was aware of the policy prohibiting intoxication when off duty, adding the rule was "not completely followed by officers *** all the time."

¶ 8        After the hearing, the ALJ found Covarrubias eligible to collect benefits because his employer failed to establish his actions constituted misconduct under section 602(A) of the

Act. The ALJ found insufficient evidence to conclude that (i) Covarrubias willfully and deliberately violated a rule, (ii) his conduct was connected to his work, as he was off duty, or (iii) his actions harmed the police department. The ALJ also noted the City relied solely on hearsay testimony to support its objection to Covarrubias's application for unemployment benefits. The City appealed to the Board.

¶ 9        After reviewing the record, including the transcript from the first administrative hearing, the Board set aside the ALJ's decision and denied unemployment benefits based on Covarrubias's termination for misconduct. The Board acknowledged Connolly's testimony was mostly hearsay, but Covarrubias admitted to being intoxicated to the point of blacking out. Moreover, because Covarrubias's encounter with the police occurred at 5:30 a.m., it was not credible that he remained blacked out three hours later when he refused a breathalyzer test.

¶ 10        Covarrubias filed for administrative review. The circuit court reversed the Board's denial of benefits and remanded for another hearing and additional fact finding. The court considered the City's evidence mostly hearsay. According to the court, the record contained no findings on how Covarrubias intentionally became intoxicated, how much alcohol he consumed, or the length of time he consumed it. The court further found the record contained nothing on how Covarrubias's intoxication while on furlough involved job performance or whether the department rule was reasonable. Moreover, questions remained as to whether Covarrubias would know that intoxication at a family member's home during a furlough violated a rule and whether his conduct harmed his employer, noting he had not engaged in similar conduct between the incident and his suspension.

¶ 11        At the third hearing, Connolly testified that the Chicago Police Department's regular practice involved giving new hires the department's rules, which prohibited off-duty intoxication, and explained that violations subjected the officer to discipline, including discharge. Connolly explained that the rule applied to on and off duty and that Covarrubias was off duty and on

furlough. Further, Connolly explained that furlough means paid vacation. He explained that subject to seniority, officers pick when they take time off duty (furlough).

¶ 12    Covarrubias testified that he had been advised about the department's rules at the police academy but given no specific warnings about intoxication since then. He acknowledged having four or five beers at his sister's house but could not recall anything else. He said that the department's rule against intoxication was not enforced, the department had no rule against intoxication on furlough, and he did not intend to become intoxicated or violate department rules.

¶ 13    The ALJ found Covarrubias ineligible for benefits. Specifically, the City's rules were reasonable and the preponderance of the evidence, including reasonable inferences, supported finding Covarrubias had willfully and deliberately violated the rule and harmed his employer.

¶ 14    Covarrubias appealed. The Board affirmed the ALJ's decision, finding the City presented credible testimony that Covarrubias violated the rule prohibiting intoxication while off duty, and Covarrubias acknowledged his intoxication. In addition, due to Covarrubias's position of public trust and the requirement he is fit, armed, and able to respond to a call at all times, his employer's rule prohibiting intoxication while off duty was reasonable, and his conduct harmed his employer by negatively affecting the public's trust. As to the other allegations, the Board found the City failed to present credible testimony or evidence to find Covarrubias violated those rules.

¶ 15    Covarrubias again sought administrative review. The circuit court reversed the Board's decision, finding the Board had not addressed whether Covarrubias's violation was willful and deliberate, rejecting the sufficiency of Covarrubias's admission of intoxication. The court also held that the Board failed to consider the amount of alcohol consumed or "the expected intoxication level for a reasonable person in [Covarrubias's] position." Nor did the Board address whether an officer on furlough would know becoming intoxicated at a family member's home violated policy.

¶ 16                                Analysis

¶ 17                              Standard of Review

¶ 18         We review the Board's decision and not the decisions of circuit court or ALJ. *Universal Security Corp. v. Department of Employment Security*, 2015 IL App (1st) 133886, ¶ 12. The degree of deference afforded an administrative agency's decision depends on whether the question involves facts, law, or a mixed question of both. *Id.* We deem the Board's factual findings and conclusions *prima facie* correct; we will reverse them only if they contravene the manifest weight of the evidence. *Persaud v. Department of Employment Security*, 2019 IL App (1st) 180964, ¶ 14. The decision to deny unemployment benefits due to an employee's discharge for misconduct presents a mixed question of law and fact. *Petrovic v. Department of Employment Security,* 2016 IL 118562, ¶ 21. We apply a clearly erroneous standard to mixed questions of fact and law. *Id*. ¶ 16 A clearly erroneous decision leaves the reviewing court " 'with the definite and firm conviction that a mistake has been committed.' " *Id.* (quoting *American Federation of State, County & Municipal Employees, Council 31 v. State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577-78 (2005)).

¶ 19                            Misconduct under The Act

¶ 20         Under the Act, an employee is ineligible for unemployment insurance benefits if discharged for misconduct connected to work. 820 ILCS 405/602(A) (West 2020); *Petrovic*, 2016 IL 118562, ¶¶ 24-25. The Act defines misconduct as "the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of [] work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." 820 ILCS 405/602(A) (West 2020).

¶ 21    The Act's misconduct disqualification reflects the legislature's intent not to exclude all employees fired from their jobs from receiving unemployment benefits but, rather, to exclude those who intentionally commit conduct they know is likely to result in termination. *Petrovic*, 2016 IL 118562, ¶ 27. Thus, an employer seeking to establish that an employee should not receive unemployment benefits because of misconduct must satisfy a higher burden than proving the employee was rightly discharged. See *Petrovic*, 2016 IL 118562, ¶ 27. Indeed, to establish disqualification, the employer must prove three elements with competent evidence in the record: (i) the employer had a reasonable work rule or policy that governed the employee's behavior in the performance of his or her work; (ii) the employee deliberately and willfully violated that rule or policy; and (iii) the violation either harmed the employer or other employees or was repeated by the employee despite a previous warning or explicit instruction from the employer to cease the conduct. See *id*. ¶¶ 26-28; *Manning v. Department of Employment Security*, 365 Ill. App. 3d 553, 557 (2006). The City contends it proved each element, so the Board's decision denying benefits was not clearly erroneous. (Covarrubias has not filed a brief, but we can address the claimed errors without the aid of an appellee's brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976)).

¶ 22                                    Reasonable Work Rule

¶ 23    In construing the word "reasonable" in section 602(A)'s general misconduct definition, an instruction is "reasonable" if it "appropriately relate[s] to the workplace" and concerns standards of behavior that an employer has a right to expect from an employee. *Persaud v. Illinois Department of Employment Security*, 2019 IL App (1st) 180964, ¶ 23 (citing *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814, 827 (2009)). A reasonable rule or policy can govern behavior outside work when a sufficient nexus exists between the behavior

and the workplace to make the rule or policy work-related. *Eastham v. Housing Authority of Jefferson County*, 2014 IL App (5th) 130209, ¶ 18. And rules regulating alcohol consumption when an employee is not working have been deemed reasonable when affecting the employee's appearance or conduct on the job. See *Neville v. Board of Review, Illinois Department of Labor*, 143 Ill. App. 3d 548, 550-51 (1986) (affirming discharge for misconduct when employee reported to work with bloodshot eyes and alcohol on breath).

¶ 24 Moreover, a police officer's work duties are broad because "[t]he nature of a police [officer's] job is that [they] be fit and armed at all times, whether on or off duty, and subject to respond to any call to enforce the laws and preserve the peace." *Garner v. City of Chicago*, 319 Ill. App. 3d 255, 261-62 (2001) (citing *Banks v. City of Chicago*, 11 Ill. App. 3d 543, 549-50 (1973). Thus, the rule prohibiting officers from becoming intoxicated when off duty is reasonable, as the officer may be required to respond to a call at any time.

¶ 25 Covarrubias was off duty. Connolly explained that the technical term 'furlough" refers to a paid vacation chosen by the police officer. But, given the broad nature of his duties, a sufficient nexus exists between an officer's conduct and work. An officer intoxicated to the point of blacking out cannot be deemed ready to perform their job. Thus, the Board's finding that the rule was reasonable was not clearly erroneous. See *McAllister v. Board of Revenue of Department of Employment Security*, 263 Ill. App. 3d 207, 209 (1994) (rule prohibiting bus driver from using cocaine outside of work was reasonable because of public safety concern); *Neville*, 143 Ill. App. 3d at 550-51 (1986) (rule prohibiting alcohol consumption "during and even before work hours" was reasonable because it affected employee's job responsibilities).

¶ 26 . Willful or Deliberate Violation

¶ 27     We next consider whether Covarrubias deliberately and willfully violated the police department's rule against intoxication. A deliberate and willful violation occurs when the employee knows of the rule but disregards it. *Sudzus v. Department of Employment Security*, 393 Ill. App.3d 814, 826 (2009); *Eastham v. Housing Authority of Jefferson County*, 2014 IL App (5th) 130209, ¶ 14 ("[d]eliberate and willful misconduct consists of conscious acts made in violation of the employer's rules when the employee knows his [or her] actions are against the rules."). Covarrubias knew about the rule as he testified several times. The City also presented evidence that Covarrubias was informed he could be fired for violating the rule.

¶ 28     The dissent asserts Covarrubias did not willfully violate the rule against intoxication because he saw other officers consuming alcohol and did not believe the rule applied off duty. *Infra.* ¶43. As noted, the Department rule prohibits intoxication on or off duty; it does not prohibit the consumption of alcohol. Further, although Covarrubias testified to the rule being selectively enforced, he presented no evidence supporting that contention or evidence that other police officers who became so intoxicated that they blacked out, got into an altercation with a woman on the street, and refused to comply with responding officers' orders were treated differently.

¶ 29     Moreover, even if the rule prohibiting intoxication was not enforced against other officers this court has held that selective enforcement does not excuse violating employment rules. *McDermott v. City of Chicago Police Board*, 2016 IL App (1st) 151979. In *McDermott*, a police officer was discharged for violating department rules by appearing in an offensive photograph. The officer asked the Police Board to take notice of two other cases involving officers who appeared in objectionable photos but were not similarly disciplined as relevant evidence of the Superintendent's "selective enforcement" of the Department's rules. The

Police Board denied the request and this court affirmed holding that "selective enforcement cannot excuse employee behavior where there is a finding that the employee violated employment rules." *Id.* ¶25. Notably, the dissent cites no cases holding otherwise. *Infra*. ¶ 41. Thus, whether the rule against intoxication was enforced against other officers has no bearing on Covarrubias's case.

¶ 30     As to whether Covarrubias knew the rule applied off duty, he repeatedly testified that he knew the rule applied to officers, whether on or off duty, and paid vacation (furlough) constitutes off duty.

¶ 31     In reversing the Board's decision, the circuit court found Covarrubias's admission of intoxication insufficient to establish a willful and deliberate violation. This finding is contrary to the evidence in the record. As noted, Covarrubias admitted he drank at least four or five beers and was so drunk he blacked out and could not remember events over the next several hours, including his interactions with police officers or his conduct at the police station. The Board could infer from this testimony that Covarrubias acted willingly in consuming alcohol to the point of blacking out, as Covarrubias presented no evidence suggesting otherwise.

¶ 32     The Board considered Covarrubias's testimony that he did not intentionally violate the rule against intoxication not credible, and the Board's credibility findings should not be disturbed by this court. *Cannici v. Department of Employment Security Board of Review*, 2021 IL App (1st) 181562, ¶ 48 ("court cannot reevaluate that credibility determination on administrative review"). In short, the City presented sufficient evidence from Covarrubias's testimony to support the Board's finding that he was aware of the rule against intoxication on and off duty and knowingly violated it by drinking so much alcohol he blacked out.

¶ 33                              Harmed the Police Department

¶ 34     The City argues that Covarrubias's intoxication while off duty harmed the police department, given his job responsibilities, and that the public's safety depended on his ability to perform those duties at any time.

¶ 35     The harm caused by an employee's rule violation can be potential. *Hurst v. Department of Employment Security*, 393 Ill. App. 3d 323, 329 (2009). Harm includes "damage or injury to other employees' well-being or morale or to the employer's *** operations or goodwill" and "damage or injury that could be reasonably foreseen to occur but for the individual being prevented from *** continuing to work." 56 Ill. Admin. Code 2840.25(b), (c) (eff. May 14, 2019).

¶ 36     The Board found Covarrubias's conduct harmed the department because "his actions affected the public's trust" and he was not "fit to perform his duties as a police officer." We agree. As noted, the public depends on the police department to maintain safety in the community. Covarrubias's conduct harmed the police department by undermining the public's trust and jeopardizing the public's safety. *See McAllister*, 263 Ill. App. 3d at 209 (employer harmed after bus driver tested positive for cocaine because of safety concerns related to employment). Law enforcement officers are held to a high standard of conduct, and Covarrubias's conduct discredited the department. *See Westby v. Bd. of Fire & Police Comm'n of City of Plano,* 48 Ill. App. 3d 388, 395 (1977) ("the public has a right to expect that its police officers *** will maintain a high standard of integrity"); *Lyles v. Dep't of Transportation*, 183 Ill. App. 3d 901, 912 (1989) ("[p]ublic policy requires a high degree of integrity in government employees," and misconduct can be "detrimental" to agency and public because their job duties require "degree of trust"). Given his job responsibilities and the readiness to perform them at any time, including while off duty, Covarrubias's misconduct harmed the police department.

*Meeks v. Illinois Department of Employment Security,* 208 Ill. App. 3d 579, 585 (1990) (employee's willful action that threatened safety of others harmed employer).

¶ 37 Evidence in the record, primarily Covarrubias's testimony, supports the Board's decision that he had willfully violated a reasonable rule and harmed the police department, satisfying section 602(A) of the Act and warranting affirming the Board. See *Woods, v. Illinois Department of Employment Security*, 2012 IL App (1st) 101639, ¶ 16.

¶ 38 Circuit court judgment reversed; Board decision affirmed.

¶ 39 JUSTICE LAVIN, dissenting:

¶ 40 The circuit court properly rejected the Board's determination that Covarrubias engaged in misconduct solely by becoming intoxicated while on furlough. It is questionable whether the City demonstrated the existence of a rule within the meaning of the Act, let alone a reasonable rule.

¶ 41 Covarrubias was not merely off duty: he was on furlough. He testified that despite police rules, he had observed officers and even sergeants consuming alcohol and that the "rule" against intoxication was not enforced. We note that the Board has not challenged the admissibility of Covarrubias's testimony that he had observed selective enforcement. *Cf. McDermott*, 2016 IL App (1st) 151979, ¶¶ 19 -26 (finding the hearing officer did not abuse her discretion in denying a motion *in limine* to have the police board take administrative notice of investigative files in other cases where those cases were unrelated and dissimilar to the plaintiff's case and were based on charges for violating different rules). Additionally, no evidence rebutted Covarrubias's testimony in that regard, notwithstanding Sergeant Connolly's testimony that new hires were generally warned that rule violations could result in discipline. In this light, the rule takes on a decidedly directory tone, not a mandatory one.

Furthermore, as our supreme court stated in *Petrovic,* the Act is concerned with conduct that an employee knows "is likely to result in their termination." *Petrovic v. Department of Employment Security,* 2016 IL 118562, ¶ 21. Here, however, the evidence suggests that no employee would expect to be terminated solely for becoming intoxicated on furlough. See *Petrovic*, 2016 IL 118562, ¶ 32 (stating that a rule is not reasonable unless it includes guidelines that should be known by the employee); *Board of Education of Round Lake Area Schools v. Community Unit School District No. 116*, 292 Ill. App. 3d 101, 111 (1997) (in assessing whether the employee willfully violated a reasonable rule the reviewing court acknowledged the hearing officer's finding that the policy in question was inconsistently administered).

¶ 42    Even assuming a mandatory rule existed, the majority's determination that said rule is reasonable is not supported by section 107-16 of the Code of Criminal Procedure (725 ILCS 5/107-16 (West 2018)). That statute states that it is the duty of every officer, "when a criminal offense or breach of the peace is committed or attempted in his or her presence, forthwith to apprehend the offender and bring him or her before a judge, to be dealt with according to law." 725 ILCS 5/107-16 (West 2018). Yet, this duty has existed in one form or another since the 19th century. See, *e.g.*, *Kindred v. Stitt*, 51 Ill. 401 (1869) (citing Gross Stat. 401, sec. 88); *People ex rel. Davis v. Nellis*, 249 Ill. 12 (1911) (J. Farmer, dissenting) (citing Hurd's Rev. St. 1909, c. 38). Neither the Board nor the majority has cited any decision rendered in the last 150 years that interprets this duty to require officers to tailor their conduct to be at the ready at every second of every day. Taken to extremes, a literal interpretation of this duty would conceivably allow the City to prevent officers from napping or taking a long bath. See also *Wolf v. Liberis*, 153 Ill. App. 3d 488, 494 (1987) (recognizing that the rule that officers are

"on-duty" at all times does not mean that all acts of an officer are within the scope of his employment). Accordingly, this ever-present duty does not automatically render any rule against drinking on furlough reasonable. See also *Kneip v. Board of Fire and Police Commissioners of City of Wood Dale*, 150 Ill. App. 3d 870, 873 (1986) (finding that although "police officers are often considered to be on duty at all times," it would be unreasonable to interpret the rules applying to Wood Dale police officers to completely prohibit them from drinking alcohol except in their own homes); *cf. Banks v. City of Chicago*, 11 Ill. App. 3d 543 (1973) (determining whether an officer's off-duty actions were in the performance of his duties for the purpose of liability). Moreover, the City presented no evidence regarding the likelihood of an officer on furlough being called into work, making any nexus between prohibiting intoxication on furlough and the officer's employment tenuous at best.

¶ 43    As for whether Covarrubias willfully violated a *known* rule, the majority ignores his testimony that he had observed officers and sergeants consuming alcohol and that he believed there was no rule prohibiting him from consuming alcohol on *furlough*. While Sergeant Connolly apparently drew no distinction between being off duty on the one hand, and being on furlough on the other, Covarrubias did. He could not have deliberately and willfully violated a mandatory rule that he did not understand to exist.

¶ 44    Under these circumstances, the Board's determination that the City proved Covarrubias was discharged for misconduct was clearly erroneous. I would affirm the circuit court's judgment reversing the Board's decision.